## COVENANT RADIO CORPORATION *v.* TEN EIGHTY CORPORATION

SUPERIOR COURT       HARTFORD COUNTY       FILE NO. 211649

Memorandum filed September 29, 1977

*Blume, Elbaum & Fischman,* for the plaintiff.

*Robinson, Robinson & Cole,* for the defendant.

PARSKEY, J. The plaintiff Covenant Radio Corporation, the owner, operator and licensee of radio station WKSS-FM, seeks to enjoin temporarily and permanently the defendant Ten Eighty Corporation, the owner, operator and licensee of radio station WTIC-FM, from using the number "96" in promoting the broadcast services of WTIC-FM. The plaintiff also seeks reasonable attorney's fees, punitive damages and additional equitable relief. Whether temporary injunctive relief should be afforded is the question presently before the court.[1]

In May, 1971, WKSS, licensed to broadcast by the federal communications commission at an assigned FM frequency of 95.7 megahertz, began using the number "96" in promoting its broadcast service. Testimonial evidence presented indicates that WKSS' use of the number "96" reflects an industry custom whereby FM stations round their assigned frequency designations up or down to whole numbers. No stations are actually assigned whole numbers as frequency designations. WKSS' program format primarily consists of so-called "beautiful music." WKSS has promoted this format over the years by using the number "96" in conjunc-

---

[1] Both the Covenant Radio Corporation and WKSS-FM are hereinafter referred to as WKSS. Both the Ten Eighty Corporation and WTIC-FM are hereinafter referred to as WTIC.

tion with such phrases as "kiss," "all music, all the time" and "a rose." The phrases "stereo 96," "FM stereo 96" and "stereo FM 96" have also been used by WKSS. The Covenant Radio Corporation acquired WKSS from Communico, Inc., in April, 1977.

In May, 1977, WTIC, licensed to broadcast at an assigned FM frequency of 96.5 megahertz, switched from classical and semiclassical programming to a "top forty" musical format. At that time WTIC began promoting and advertising itself as "WTIC-FM 96." The phrase "96 ticks" has also been used extensively by WTIC since that time. WTIC's use of "96" reflects the aforementioned industry custom of rounding off assigned frequency designations to whole numbers.

Neither the number "96" nor the phrases used in conjunction with the number "96" are registered with the Connecticut secretary of the state[2] or with the United States patent and trademark office as service marks.

To obtain temporary injunctive relief WKSS must show clearly that protectable interests are at stake. It must also establish, to a reasonable certainty, that it will prevail subsequent to a final hearing on its application for a permanent injunction. *Boesch* v. *Johnson Wholesale Perfume Co.,* 9 Conn. Sup. 110, 111. In that regard, WKSS must establish both irreparable injury and lack of an adequate remedy at law. *Stocker* v. *Waterbury,* 154 Conn. 446, 449; *Weaver* v. *Ives,* 152 Conn. 586, 590, 591. In any event, the granting of a temporary

---

[2] General Statutes §§ 35-11b et seq. provide for the registration of service marks with the secretary of the state's office. General Statutes § 35-11a (b) defines service mark as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others."

injunction in this matter lies within the sound discretion of the court. *Boesch* v. *Johnson Wholesale Perfume Co.,* supra.

WKSS' claims for temporary injunctive relief are twofold: first, WKSS claims that WTIC's use of the number "96" constitutes the unlawful appropriation of a service mark in violation of General Statutes § 35-11i (c); second, WKSS claims that WTIC's use of the number "96" amounts to unfair competition and an unfair or deceptive trade practice in violation of General Statutes § 42-110b (a).

General Statutes § 35-11i (c) provides that "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law . . . shall be a ground for injunctive relief against unauthorized use of such mark . . . ." Relying upon this statutory provision, WKSS claims, in effect, that the number "96" constitutes a service mark valid at common law and protectable by injunctive relief from WTIC's unauthorized use.

Contending that numbers such as "96" can be service marks, WKSS argues that its use of the number "96" has been for purposes of identifying the origin of its broadcast service and for distinguishing that service from other services. Accordingly, WKSS claims that WTIC's use of the number "96" constitutes an actionable dilution or infringement of a service mark. In the alternative, WKSS asserts that, even if it has used the number "96" for descriptive or functional purposes, a secondary meaning, upon which service mark status may be predicated, has attached.

WTIC responds to those contentions by pointing out that the number "96," adopted and used by WKSS pursuant to an industry custom, cannot be appropriated by WKSS as a service mark. In that

regard, WTIC claims that WKSS' use of the number "96" is for purposes of notifying listeners of its "address" on the FM dial. WTIC contends that such a functional use of the number "96" precludes that number from attaining service mark status. Alternatively, WTIC asserts that, even if the number "96" could acquire a secondary meaning apart from its locational attributes, no evidence of secondary meaning has been presented by WKSS.

In determining whether the number "96" constitutes a common-law service mark protectable under § 35-11i (c), the court will be guided by the law of trademarks. Indeed, service marks are primarily trademarks relating to services. *Younker* v. *Nationwide Mutual Ins. Co.*, 175 Ohio St. 1, 7.

A trademark is intended to designate distinctively the origin or ownership of the product to which it attaches. In other words, a trademark is designed to give the public notice of the identity of the producer. *Canal Co.* v. *Clark*, 80 U.S. 311, 322; *Boardman* v. *Meriden Britannia Co.*, 35 Conn. 402, 413. Descriptive terms or symbols cannot ordinarily attain trademark status; *Canal Co.* v. *Clark*, supra, 323; and marks which are intended to denote the quality or nature of a product are generally incapable of exclusive appropriation. Thus, an individual or corporation "has no right to appropriate a sign or symbol, which from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose." *Manufacturing Co.* v. *Trainer*, 101 U.S. 51, 54.

Under the foregoing analysis, terms, symbols or features performing utilitarian functions are not normally entitled to protection as trademarks. See *Schwinn Bicycle Co.* v. *Murray Ohio Manufacturing Co.*, 339 F. Sup. 973, 980 (M.D. Tenn.), affirmed,

470 F.2d 975 (6th Cir.). Likewise, geographical names cannot be appropriated as trademarks since they point to the place of production, not to the producer. *Canal Co.* v. *Clark,* supra, 324.

So long as they are adopted arbitrarily to indicate origin, numbers may be entitled to trademark protection. *Shaw Stocking Co.* v. *Mack,* 12 F. 707, 713 (Cir. Ct. N.D. N.Y.). See *beef & brew, inc.* v. *Beef & Brew, Inc.,* 389 F. Sup. 179, 184 (D. Ore.). Numbers utilized for descriptive or utilitarian purposes, however, generally are not protected as trademarks. *In re Union Oil Co. of California,* 88 F.2d 492, 494 (Court of Customs and Patent Appeals); *Vacuum Oil Co.* v. *Climax Refining Co.,* 120 F. 254, 255 (6th Cir.), cert. denied, 191 U.S. 574. To constitute a service mark valid at common law, a number must have been adopted arbitrarily for nondescriptive purposes. A number which has meaning or descriptive quality with reference to a particular service is ordinarily not entitled to protection. Costas and Harris, "Patents, Trademarks and Copyrights—The Legal Monopolies," 37 Conn. B.J. 420, 424–25.

Significance attaches to the fact that the number "96" was not adopted by WKSS arbitrarily, but pursuant to an industry custom. In accordance with that custom, WKSS' use of the number "96" is designed not to point to the ownership or origin of the broadcast service, but to facilitate listener access to that service by indicating the service's approximate frequency modulation.

WKSS' use of the number "96" is more connotative of the nature of WKSS' service than the origin or ownership of that service. When used in conjunction with phrases such as "FM stereo," the number "96" draws listener attention to the fact that WKSS' service is broadcast over the FM band. The

number "96" is thereby given descriptive meaning in relation to WKSS' broadcast service. WKSS' use of the number "96" is both utilitarian and descriptive. Therefore, the number "96," as used by WKSS, has not attained service mark status.

As noted, WKSS alternatively contends that, even if the number "96" has been used for descriptive or functional purposes, that number possesses a secondary meaning by which service mark status has been acquired. Under the doctrine of secondary meaning, a descriptive term, symbol or figure is protectable as a trademark or service mark when it "has been so used that the primary significance of the term [symbol or figure] in the minds of the consuming public is not the generic product (or service) but the particular product (or service) and its producer or supplier . . . ." *beef & brew, inc.* v. *Beef & Brew, Inc.*, 389 F. Sup. 179, 184 (D. Ore.). The burden is upon the party claiming secondary meaning to establish that the primary significance of a descriptive term, symbol or figure in the minds of the consuming public is not the product or service but the producer or supplier. *Kellogg Co.* v. *National Biscuit Co.*, 305 U.S. 111, 118.

To establish secondary meaning, it is incumbent upon WKSS to make an evidentiary showing that a significant number of Hartford-area listeners identify the number "96" with WKSS and its broadcast service. The record indicates that such a showing has not been made. WKSS' claim of secondary meaning therefore rests unsubstantiated.

WKSS has failed to show clearly that the number "96" has attained the status of a WKSS service mark valid at common law. Since the number "96" is not a WKSS service mark, WTIC's use of that number does not constitute service mark dilution or infringement. In that regard, neither has WKSS

incurred irreparable harm nor has it been deprived of a right for which an adequate remedy at law fails to exist.[3]

WKSS has failed to establish, with reasonable certainty, that it will ultimately prevail on its service mark claim. Accordingly, temporary injunctive relief cannot be grounded upon that claim.

General Statutes § 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Where unfair methods of competition and unfair or deceptive acts or practices have been committed in violation of § 42-110b (a), injunctive relief may be afforded, pursuant to §§ 42-110g (a) and 42-110g (d).

In requesting temporary injunctive relief, WKSS claims that WTIC's use of the number "96" constitutes such an unfair or deceptive act or practice that it amounts to an unfair method of competition. WKSS contends that WTIC's use of the number "96" is unfair because it is unethical, oppressive and offensive to public policy. WKSS also claims that WTIC's use of the number "96" is deceptive since "[a] radio listener trying to find WKSS (FM) and learning through one or more of the media that WTIC (FM) calls itself '96' might well be deceived into believing the change of ownership of WKSS (FM) [in April 1977] brought about a change in both format (i.e., 'top 40') and a change in call letters (i.e., WTIC [FM])." Finally, WKSS argues that WTIC's use of the number "96" has adversely affected and will continue to affect adversely WKSS' broadcast ratings, as measured by the American Research Bureau (Arbitron), and will thereby cause WKSS to incur irreparable harm.

---

[3] The court observes that the number "96," as used by WTIC, has not attained the status of a WTIC service mark. Like WKSS, WTIC uses the number "96" solely for descriptive and utilitarian purposes.

In response, WTIC contends that WKSS has made an insufficient evidentiary showing under § 42-110b (a), thereby precluding injunctive relief under §§ 42-110g (a) and 42-110g (d).

A trade practice is unfair when it offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Spiegel, Inc.* v. *Federal Trade Commission,* 540 F.2d 287, 293 (7th Cir.).[4] For purposes of obtaining temporary injunctive relief, WKSS has failed to establish that WTIC's use of the number "96" constitutes an unfair trade practice within the meaning of § 42-110b (a).

WKSS stresses the small number of reported incidents in which two FM stations have resorted to the same rounded dial number in their advertising and promotions. On that basis, WKSS contends that WTIC's use of the number "96" must be presumed to be both offensive to public policy and unethical.

WTIC's use of the number "96" is based on an industry custom which is both nonoffensive to public policy and ethical. Since the custom itself is not unfair, actual resort to that custom by WTIC is not unfair. To presume WTIC's use of the number "96" to be unethical and offensive to public policy would therefore be inappropriate. The fact that WTIC commenced use of the number "96" subsequent to the last day of an Arbitron rating period

---

[4] General Statutes § 42-110b (b) provides that "[i]t is the intent of the legislature that in construing . . . [§ 42-110b (a)], . . . the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended." Accordingly, the court will be guided by interpretations given 15 U.S.C. § 45 (a) (1), which prohibits unfair methods of competition and unfair or deceptive acts or practices in commerce. In interpreting § 42-110b (a), the court will also look to the common law of unfair competition.

may have been purely coincidental. Further, any listener confusion accruing since that time need not have been oppressive to WKSS and offensive to public policy since such confusion could have accrued to WKSS' benefit.

For a trade practice to be deceptive, it must have a tendency and capacity to deceive the consumer. See *Federal Trade Commission* v. *Hires Turner Glass Co.,* 81 F.2d 362, 364 (3d Cir.). Subjective intent to deceive on the part of the individual or business engaged in the challenged practice need not be established. *Juvenile Shoe Co.* v. *Federal Trade Commission,* 289 F. 57, 59 (9th Cir.). Additionally, the consumer must be deceived in his initial contact with the challenged practice. *Carter Products, Inc.* v. *Federal Trade Commission,* 186 F.2d 821, 824 (7th Cir.).

The court has been presented with two divergent standards for determining whether WTIC's use of the number "96" has had and will have a deceptive impact. The court is urged by WKSS to consider whether the ignorant, unthinking and credulous person would tend to be deceived. See *Aronberg* v. *Federal Trade Commission,* 132 F.2d 165, 167 (7th Cir.). WTIC, on the other hand, exhorts the court to adopt a more flexible standard. Under such an approach, the challenged practice must be likely to deceive or mislead a person exercising such reasonable care and observation as the public generally is capable of exercising. In ascertaining deceptive impact, the court would look beyond the carelessness or ignorance of the uninformed. See *Yale University* v. *Benneson,* 147 Conn. 254, 255–56, 257; *Middletown Trust Co.* v. *Middletown National Bank,* 110 Conn. 13, 21.

The court finds that the "ignorant person" standard advocated by WKSS is unrealistic. Most trade practices, particularly advertisements, would tend

somewhat to deceive persons ignorant of the underlying subject matter. Accordingly, most trade practices would be deemed deceptive under the "ignorant person" standard. Such a result would have unnecessarily severe repercussions for trades and businesses regulated by statutes such as § 42-110b (a).

A more workable standard is the "reasonable public" approach advocated by WTIC. Under that approach, WKSS' reference to the hypothetical listener falters. The court finds it difficult to believe that an individual who exercised such reasonable care as the public is generally capable of exercising and who was knowledgeable enough to be aware of WKSS' change in ownership would not know that WKSS did not change its musical format and that WKSS did not change its call letters.

As WTIC points out, WKSS' showing of deception and concomitant, irreparable harm falters further in that (1) it fails to establish that Arbitron diarists have or will refer to WKSS in their diaries as "96," or "FM 96" or "stereo FM 96";[5] (2) it fails to establish that Arbitron diarists have or will refer to WTIC as "96," "FM 96" or "stereo FM 96"; and (3) it fails to establish confusion among Arbitron diarists listening to radio stations WRCH-FM and WEZN-FM, both of which are located near the number "100" on the FM dial.

Additionally, WTIC's use of the number "96" could accrue to WKSS' benefit. Some Arbitron diarists may be attracted to WTIC-FM from other AM

[5] Under the Arbitron ratings service, the size of a radio station's listenership in a specified listener market is approximated. Hartford-area listeners participating in an Arbitron survey are given diaries in which they are instructed to designate by call letters or otherwise the particular stations to which they are listening at particular times. Each diarist represents approximately one thousand listeners. When Arbitron is unable to ascertain from a diarist's entry which station the diarist was listening to, it may attempt to contact that diarist by telephone. Otherwise, credit for such an entry will be divided up among the stations concerned.

or FM stations with similar musical formats. If such a diarist enters the designation "FM 96" in his diary, WKSS could ultimately be given partial credit for that entry.

Accordingly, insufficient evidence exists for the court to determine that WTIC has engaged in a deceptive trade practice or act which may be temporarily enjoined.[6]

WKSS has failed to establish with clarity that it possesses in the number "96" a service mark valid at common law. Since WKSS has failed to establish the number "96" as its service mark, it has neither incurred irreparable harm nor been deprived of a legal interest protectable by injunctive relief. Similarly, WKSS' failure to show clearly that WTIC's use of the number "96" constitutes an unfair method of competition and an unfair or deceptive trade practice indicates that WKSS has neither suffered irreparable harm nor been deprived of a legal right protectable by injunctive relief. At the most, WKSS' ultimate success in this matter is uncertain. For the court to grant a temporary injunction restraining WTIC from using the number "96" in its advertising and promotions would therefore be inappropriate.

Accordingly, the plaintiff Covenant Radio Corporation's application for a temporary injunction is hereby denied.

---

[6] Citing *Murray Shoe Corporation* v. *Federal Trade Commission,* 304 F.2d 270, 272 (2d Cir.), WKSS proposes that a statement or act susceptible of a misleading interpretation should be construed against the advertiser. Such a construction is designed to protect innocent consumers from harm. Where a fellow advertiser alleges harm, as in the present matter, the consumer protection justification is inapplicable. In the latter circumstance, the court need not construe the purportedly deceptive act against the advertiser. Further, such a construction must be predicated upon a minimal evidentiary showing of deceptive impact. Since that showing is lacking in the present matter, the court is not confined by the restraints of the proposed construction.