[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is tried to the court and involves claims by the plaintiff against the one remaining defendant for negligence in the development of a subdivision known as Bishop Woods in the Town of Southington, Connecticut, for breach of implied warranty under section 47-118 of the Connecticut General Statutes and for a violation of the Connecticut Unfair Trade Practices Act pursuant to Connecticut General Statutes sections42-110a et. seq.
The plaintiff's complaint relates to premises known as 15 Bishop Avenue, Southington, Connecticut which is currently owned by the plaintiff. She purchased this property which consists of a single family dwelling house located on subdivision Lot No. 3 of the Bishop Woods subdivision from Nancy Berger and Cesar A. Gonzalez on November 13, 1987. The defendant, Villa Construction Company, Inc. had constructed the dwelling house located on the subject premises under a contract with Nancy Berger and Cesar A. Gonzalez and subsequently closed and conveyed title to Nancy Berger and Cesar A. Gonzalez on July 29, 1986.
Nancy Berger and Cesar A. Gonzalez had no complaints with regard to storm water drainage from the subject premises or any problems or complaints of any nature whatsoever with the defendant during the period of time that they owned the property from July 29, 1986 to November 13, 1987.
The plaintiff claimed she did not walk to rear yard of her property when she inspected it prior to its purchase in the fall of 1987. She claimed she viewed the property from the inside of the house. She also claimed she first noticed an accumulation of surface water in the rear yard in the area immediately adjoining a sliding door but that no water entered the house itself. In the spring of 1988, she decided to clear the back yard area of debris and wished to level out the rear yard. At first she thought she could do it herself. She consulted various contractors and ultimately met with Anthony J. Tranquillo, Southington Town Engineer, who advised her that the entire lot on which her house was located was actually situated in an Inland-Wetlands area. The plaintiff was extremely distressed when she was advised that her property was in a wetlands area. She describes herself as being "heavy into horticulture". She claimed she intended to relocate certain outdoor CT Page 4728 plants from her former home which would not survive in land prone to be wet.
The plaintiff then sought estimates from various contractors concerning programs to remove the occasional water buildup in her back yard area. She relied upon advice received from D Company, a trucking company, and thereafter contacted the civil engineering firm of O Company to prepare a plan to drain the rear yard into the storm water drainage system maintained by the Town of Southington on Bishop Avenue, the public street fronting the subject premises. The plaintiff implemented her plan by means of seeking the approval of the Conservation Commission of the Town of Southington as required by the Inland-Wetlands Regulations of the Town of Southington. The modifications and alterations proposed by the plaintiff included filling a wetlands area.
O of the civil engineering firm of O Company presented the plaintiff's drainage plan to the Southington Conservation Commission and obtained the necessary approval. The plan was then built to its specifications by the D Trucking Company. The plaintiff seeks reimbursement for various costs and expenses including bills from Arbortech and Gro-Landscape. She claims that work by Arbortech was necessary in order to remove trees which had died because of the water in the soil in which they were growing. She contends that Gro-Landscape was hired to hydroseed the premises. The plaintiff is also seeking reimbursement of interest costs for a second mortgage which she secured in order to pay the costs associated with draining and filling her rear yard.
The defendant constructed the five lot subdivision known as Bishop Woods after its approval by the Southington Planning and Zoning Commission and the Southington Conservation Commission in early 1986. Because the subdivision was partially located in an Inland-Wetlands area, the defendant presented plans to the Southington Conservation Commission regarding surface water drainage within and upon the site. The approved subdivision plan states "any future grading activity not part of this plan and involving Inland/Wetland shall require approval from the Inland/Wetland Agency". The grading and utility plan for Bishop Woods contains a direction that "graded swale as shown to assume no drainage occurs to abutting owner". Gary Salvatore and John Giano are principals of the defendant. There is no dispute the owner of adjoining property to the north of the Bishop Woods subdivision is Ilio Fusciello. He had no objection to the subdivision, providing however no water flowed from it into and upon his property. The maps for the subdivision and for the grading of the Bishop Woods subdivision had been prepared by O Company. The principals of the defendant had CT Page 4729 never contracted for the services of this firm before this project. The defendant worked directly with a member of O Company in the development of the plans as originally conceived and made the appropriate presentation to the Southington Planning and Zoning Commission and the Southington Conservation Commission in 1985 and early 1986 resulting in the approval of the grading and utility plan as well as the subdivision. The subdivision plan and the grading plan offer no specific locations for swales and drainage within the subdivision itself other than as previously indicated. The exact location of grading was established by the defendant in the "field" which is normal practice in subdivision development.
The subdivision plans and the grading and utility plan established elevations for the five houses to be located on the five subdivision lots as approved. Those elevations are designated by the letters "F.F.". On the subject premises a designation of "F.F.=290.0" appears within the proposed foundation as shown on the grading and utility plan. The type of home designated to be constructed on the same plan is a "24' by 46' raised ranch". For Lot No. 1 the designation appears as "26' by 49' duplex F.P.=290.0".
The elevations as proposed for the home are specified as "F.F." and that the designation means "finished floor". In the case of a raised ranch "finished floor" means the lowest living level which could conceivably be the basement level and that finished floor in the case of a duplex with a full foundation means the floor created by a wood deck built upon the foundation. A member of O Company C opined that the plans prepared by O Company would have required the homes to be elevated allowing for drainage around the houses. He acknowledges that the plans do not designate, depict or specify elevations for the contour as shown immediately surrounding the proposed foundations. He acknowledges also that the legend of the map submitted by the plaintiff addresses "proposed contours" and requires certain elevations to be established on a contour line. He acknowledges that those elevations are not shown in the contour line surrounding the proposed foundations.
Both O as Land Surveyor for O Company C and as its Civil Engineer admit that the grading and utility plan does not require swales or grading to be placed in any particular location other than to assure drainage in a generally southerly direction from the northerly line of the subject premises-as it abuts property of F. O recalled that the Conservation Commission of the Town of Southington expressed concern about the amount of fill to be located within and around the homes to be developed on the site. A maximum of two to three feet of fill immediately around the home was suggested. He contends that the CT Page 4730 plans prepared by his office in 1985 on behalf of the defendant satisfied that requirement.
Difficulties arose in reconciling the "F.F." designation on the grading and utility plan since the same elevation of 290 was provided for both a raised ranch home on Lot No. 3 and a duplex type dwelling house on Lot No. 1. Several telephone calls were placed to both O Company by Gary Salvatore and John Giano in order to reconcile the difference. The defendant was alternately told that "F.F." designated the finished cellar floor and the first floor deck. They pointed out the inconsistency with setting the same elevation for the different types of homes to be constructed on Lot No. 1 and Lot No. 3. After several telephone conversations, they were instructed by O Company to make a field judgment as to the elevation to be established for each home on the respective lots involved. Both Mr. Giano and Mr. Salvatore recall, and this court finds the testimony credible, on site inspections by a representative of the Southington Planning Department, were instructed that only one to two feet of fill were to be installed on any given lot. With those parameters in mind and the instruction by O to alter the elevation as field conditions dictated, the concrete floor of the foundation for the subject premises was actually installed at an elevation of 286.90.
The principals of the defendant made adjustments to the foundation elevation to provide for a pitch from the foundation to the elevation of Bishop Avenue (i.e. approximately elevation 284). Mr. Giano and Mr. Salvatore actually performed the field work utilizing a transit to establish the elevation of the house on the subject premises. Swales were created along the boundary lines of the side yards of the houses fronting on Bishop Avenue to provide for drainage from the back yards to the storm water drainage system located in Bishop Avenue. A major drainage swale crossed the rear portion of the subject premises and passed in a generally southwesterly direction across the rear yard of Lot No. 2 (i.e. 23 Bishop Avenue) and then down the boundary line between Lot No. 1 (31 Bishop Avenue) and Lot No. 2. Actual drainage swales were installed after all of the construction in the subdivision had been completed so that very precise grades could be established. They, the defendant, created a very slight pitch to the property from the north to the south with the northerly most elevation being approximately 290 and the elevation in Bishop Avenue being approximately 284. They and the owner of #31 Bishop Avenue (Lot No. 1) actually observed the functioning of the storm water drainage system within and through the five lots.
The drainage system installed by the defendant functioned in a proper fashion after it had been installed. Later, CT Page 4731 however, a considerable amount of fill was brought in by others thereby compromising the integrity of the drainage swale.
This site in its original state prior to development held standing water several inches in depth. Water had to be contained to the rear of the lots in the development and drained. The grading and utility plan for Bishop Woods clearly states in the notation section "no clear cutting — preserve as many trees as possible". That same plan states "applicant shall notify planning office twenty-four hours in advance of any grading activity commencing". The defendant was continually inspected by G on behalf of the Southington Planning office and the Southington Conservation Commission regarding filling, grading and preservation of the trees and wetlands area located to the rear of the lots created by the subdivision. The defendant followed faithfully the direction of the Town of Southington with regard to filling. It should also be noted the Grading and Utility Plan instructs specifically "developer to be responsible for correcting any unforeseen field conditions".
O Company returned to the subdivision site to stake out the proposed foundations and later returned for the purpose of locating the foundations as actually built for the preparation of "As-Built Plot Plans". O testified that O Company only made horizontal measurements and never made verification of vertical measurements (i.e. elevations).
Fill was placed in a drainage swale along the easterly boundary line of subject premises as it abuts Lot No. 4 (56 Autran Avenue). This fill was placed at some time after the final work had been performed on the site by defendant. Mr. Giano testified that the swale along that boundary line was dammed and no longer functioned as it had been constructed by defendant. Elevations in detail had been established for all swales and that swale, in particular, when defendant was building the drainage system. The patio area to the rear of the subject premises on which the plaintiff first noticed an accumulation of water was not constructed by defendant. The contract between defendant Villa Construction Company, Inc. and Berger/Gonzalez required that defendant complete rough grading within a 30' perimeter of the foundation of the house. Grading was established from the street line on the subject premises to the side yard and that grading continued approximately 30' beyond the rear of the house. Grades were established in this process by utilizing a transit. Disturbed areas were raked. The area immediately adjoining the foundation was hand-raked. Defendant did not seed the disturbed areas and by defendants' contracts each buyer of the subdivision lots did their own seeding. Mrs. Berger and Mr. Gonzalez seeded the front and side yards of the subject premises and planted some shrubs. They did not seed the CT Page 4732 area to the rear of the house and they did no filling or grading on the site during their ownership. The grading and utility plan contains a separate note reading "area of disturbed Inland-Wetlands shall be restricted to the immediate house area — remaining land will become lawn or remain undisturbed". Defendant did not grade the remainder of the rear yard of the subject premises but only graded approximately 30' from the rear foundation wall leaving the balance of the property in its natural state in order to comply with that provision of the approved plan. Those provisions sought to limit disturbance of the natural areas of the wetlands and to minimize tree cutting.
Plaintiff and defendant have submitted to the court a blackboard diagram demonstrating the difference in the construction of a duplex style dwelling house and a raised ranch style dwelling house as that difference would affect the "F.F." elevation as specified by O Company.
The defendant never received any complaints from the plaintiff or any notice of the plaintiff's intention to take action against it until its receipt of the instant Summons and Complaint sometime after October 6, 1989.
The defendant was not negligent in constructing the drainage system for Bishop Woods subdivision Section 3 pursuant to plans approved by the appropriate agencies of the Town of Southington.
The defendant did not breach any implied warranty in its construction of a drainage system for the Bishop Woods subdivision. No such breach has been proven.
The plaintiff is not entitled to relief from the defendant under the terms and provisions of the Connecticut Unfair Trade Practices Act.
Applicable limitations as to actions have not been tolled.
The defendant performed its duties with regard to the construction of the Bishop Woods subdivision drainage system in a reasonable fashion and with due case. It created a system that was operational and which would still be functioning correctly if it had not been altered by others. A functioning swale was thereby compromised consequently diminishing the amount of water which could flow from the subject premises across Lot No. 2, down the boundary line between Lot No. 1 and Lot No. 2 to the storm water drainage system in Bishop Avenue. Fill was placed along the easterly boundary line of the subject premises and leveled so that it completely blocked the functioning of a swale along the boundary line between the subject CT Page 4733 premises and Lot No. 4. These changes impacted the subject premises by creating standing water to the rear of the property. This was an area which had been undisturbed by the construction pursuant to the requirements of the grading and utility plan for Bishop Woods.
When the plaintiff purchased the subject premises in the fall of 1987, the prior owners, Nancy Berger and Cesar A. Gonzalez, had experienced no drainage problem. She has never experienced invasion of water into the house proper but described her interest in planting her rear yard with shrubs, bushes and trees. She indicated that the property appeared to have standing water to the rear and she thought that some minor filling would eliminate the problem. She sought the advice of the Southington Town Engineer, who explained to her that the property which she purchased was located entirely within an Inland/Wetlands area. He explained to her that she could do no filling unless and until she obtained a permit to do so. She was apparently and noticeably disturbed with these findings. The intent, it would appear, in part, of the original Town approval which sought to limit the amount of tree cutting and filling on the site as appears under the note section of the grading and utility plan was to keep the land undisturbed but consistent with it the careful development according to plan.
Because the plaintiff sought to improve her rear yard from the condition which had been originally intended by the Town approval she was required to prepare a plan for submission to the Conservation Commission of the Town of Southington. That plan includes an underground drainage system to collect water in the rear portion of her back yard by means of a catch basin. The water is then carried by means of a piping system to the storm water drainage system in Bishop Avenue. In this fashion, Ms. Jankura not only relieved the standing water problem created by others but also finished graded her entire lot, and appears to have fenced it, seeded it, cut trees, and shrubbed it as is evidence from photographs submitted in evidence.
The activities of others with regard to altering grades and filling swales were totally outside the domain and control of the defendant. The development of plaintiff's back yard was never the original intention of the approvals from the Town of Southington or the defendant's contractual obligations with the original purchasers, Berger and Gonzalez.
Mrs. Berger never had any complaint with regard to not only the drainage from the site but also the general construction of her home. She and Mr. Gonzalez purchased another home constructed by the defendant when they sold the subject premises in November 1987. In any event, Berger and Gonzalez CT Page 4734 have throughout denied any complaint as to negligence by the defendant.
The plaintiff's claim as to breach of implied warranty assumes that the defendant corporation has some obligation to the plaintiff. Section 47-118 of the Connecticut General Statutes limits the right to claim a breach of implied warranty to a "purchaser". The statute does not contemplate the right to assign a claim and it may be concluded that lacking such a Statutory Right of Assignment, the right of assignment does not exist. The statute furthermore specifies in subsection (e) 3 of section 47-118 that the implied warranty "shall terminate in the case of an improvement completed at the time of the delivery of the deed to the purchaser, one year after the delivery or one year after the taking of possession by the purchaser, whichever occurs first". Mrs. Berger and Mr. Gonzalez were the purchasers from the defendant by virtue of a Warranty Survivorship Deed dated July 29, 1986. Mrs. Berger and Mr. Gonzalez took possession of the premises immediately thereafter. The original purchasers had no problem with the premises nor was there evidence of improper construction apparent from approximately July 19, 1986 to the date on which title was conveyed to plaintiff on November 13, 1987. An action did not arise within one year of the date of the delivery of the deed or the taking of possession by Berger and Gonzalez. Any claim under section47-118 of the Connecticut General Statutes is, therefore, foreclosed. Cashman v. Calvo, 196 Conn. 509 (1985).
The defendant has not violated the requirement of section 47-118 subsection a of the Connecticut General Statutes as to implied warranty. Defendant has constructed the drainage system within and upon the subject subdivision in a workmanlike manner and according to sound engineering standards. Defendant followed the very General requirements of the drainage plan as conceived by the engineering firm of O Company. The defendant was provided with a general direction on the grading and utility plan that the premises included a "graded swale as shown to assure no drainage occurs to abutting owner". The property was "relatively flat". It could, however, provide "positive drainage" in a southerly direction assuming that proper grades were established. Defendant established those grades using its judgment as the plan permitted since it does not locate swales in any fashion whatsoever. The plan does not direct the installation of subsurface piping or drainage system as has been installed by the plaintiff. Surface water was simply to drain through swales along boundary lines and across property to Bishop Avenue. An operable system was installed and functioning in accordance with the plan until alterations were made by others. These changes were well outside the control and contemplation of the defendant. The Town of Southington sought to CT Page 4735 protect the grades which were established by the developer by restricting any future grading by anyone in the subdivision in accordance with the notice which appears on the subdivision plan for Bishop Woods. That note states "any future grading activity not part of this plan and evolving Inland/Wetlands shall require approval of the Inland/Wetlands Agency". Fill was introduced in the new area and changed the grades thereby damming the operating swale system running to the southwest of the subject premises. Some one other than defendant also introduced fill in the drainage swale bordering east thereby rendering that swale inoperable and useless. The defendant has not violated section 47-118 of the Connecticut General Statutes.
As to the third count of the plaintiff's complaint alleging a violation of the Connecticut Unfair Trade Practices Act, the defendant did not engage in any unfair or deceptive trade practice as defined in section 42-110b of the Connecticut General Statutes. The defendant sold the subject premises to Mrs. Berger and Mr. Gonzalez when the lot in question had not even been developed. The purchasers at the site at that time were shown a set of maps including the subdivision map, the grading and utility plan, and the wetland and erosion control plan for Bishop Woods. The wetlands and erosion control plan shows the boundary of soil designated "wetland soil type WR". The grading and utility plan shows the wetlands limit line. Mrs. Berger acknowledged seeing the plan and actually viewing the property before any excavating had taken place. No misrepresentations, omissions, or deceptions have been established by any party. Mrs. Berger, visiting the premises while construction was underway was never prohibited from inspecting and/or viewing the premises to her full and complete satisfaction. The defendant committed no act in its relationship with Berger and Gonzalez which act could be considered unlawful under section42-110b of the Connecticut General Statutes that it offends public policy, the common law, or otherwise. Sportsmen's Boating Corp. v. Hensley, 474 A.2d 780, 192 Conn. 747 (1984). For a trade practice to be "deceptive trade practice" it must have a tendency and capacity to deceive the consumer and the consumer must be deceived in his/her initial contract with the challenged practice. Covenant Radio Corp. v. Ten Eighty Corp.390 A.2d 949, 35 Conn. Sup. 1 (1977). Mrs. Berger has no complaint in this regard with the defendant. In any event, the plaintiff has no such cause of action. In addition, section 52-577
of the Connecticut General Statutes stipulates that claims under the Connecticut Unfair Trade Practices Act are governed by a three year Statute of Limitations. Assuming a sale by contract between the defendant and Berger/Gonzalez entered prior to the closing date of July 29, 1986 and the commencement of the instant action in October 1989, the Statute of Limitations as to this cause of action expired prior to the commence of action. CT Page 4736 Section 52-577 similarly limits the commencement of general tort actions to three years and a similar analysis of the dates would require a conclusion that the right to bring a negligence action has elapsed in this case.
This court finds credible the testimony of Mr. Giano and Mr. Salvatore, principals of the defendant corporation with regard to foundation elevation and the designation "F.F." appearing on the maps. It also finds credible their testimony and recollection of conversations with principals of O Company. It also finds that O Company plans did not offer any specific direction as to construction of drainage swales but only that drainage occur in a generally southerly direction into and upon Bishop Avenue.
In totality, the plaintiff's claim against the defendant under any of the three counts wherein the defendant is named has not been proved by a fair preponderance of the evidence. In any event, plaintiff's rights of action have expired by reason of the operation of appropriate Statutes of Limitations.
Judgment may enter for the defendant.
LEONARD W. DORSEY SENIOR JUDGE