[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The jury having found negligence and the intentional infliction of emotional distress, returned a verdict in favor of the plaintiff and against the defendants, Dean Edward Lazarus and Post College. In addition, the jury found that Post College has breached its contract with the plaintiff and had violated the Connecticut Unfair Trade Practices Act (CUTPA). The jury awarded punitive damages on the contract and CUTPA claims against Post College and on the intentional infliction of emotional distress claim against Post and Lazarus.
The jury also returned a verdict in favor of the three other named defendants and, therefore, the term "defendants", as used in this memo, shall hereinafter refer specifically to Dean Edward Lazarus and Post College.
Pursuant to §§ 320 and 321 of the Practice Book, the defendants timely filed motions to set aside and for a directed verdict. They contend that the court should set aside the jury's verdict on Counts Six and Seven of plaintiff's complaint (intentional infliction of emotional distress), Count Nine (Connecticut Unfair Trade Practices Act) as well as the punitive damages claims and claims for tuition owed because there was insufficient evidence to support such findings. The defendants CT Page 11221-M also claim that the CUTPA verdict should be set aside because the claim on which it is predicated (plaintiff student v. defendant school) is not actionable under CUTPA.
Conceding that the jury was presented with sufficient evidence from which it could reasonably infer negligence, the defendants have not moved to set aside the verdict with regard to same. However, they do move for a remittur to reduce the total verdict, claiming that it is economic.
Motions to set aside a verdict as contrary to the evidence have long been disfavored by our courts. See, e.g., Labbee v.Anderson, 149 Conn. 58, 60 (1961); Schlag v. Paffney,103 Conn. 683, 685 (1925). It is clear that a verdict should not be set aside where a jury could reasonably have based its verdict on the evidence. Skrzypiec v. Noonan, 228 Conn. 1, 10 (1993); Wuv. Fairfield, 204 Conn. 435, 440 (1987); Vickers v. Jessup,32 Conn. App. 360, 370 (1993); American National Fire Ins. Co. v.Schuss, 221 Conn. 768, 774 (1992).
In ruling upon a motion to set aside a verdict, the court must view the evidence in the light most favorable to sustaining the jury's verdict. Skrzypiec v. Noonan, 228 Conn. 1, 10
(1993); Campbell v. Gould, 194 Conn. 35, 41 (1984). The question to be decided when considering such a motion is "whether the jury could reasonably have concluded upon the facts established and inferences reasonably drawn therefrom that the plaintiff had sustained his burden of proof." Gold v.University of Bridgeport School of Law, 19 Conn. App. 379
(1989). In the resolution of this question, the court has examined the evidence in the light most favorable to supporting the verdict and from that examination the court is of the opinion that a reasonable jury could have found the following facts from the evidence presented at trial.
The plaintiff, Marion Szollosy, began studies in the paralegal program at Post College in January, 1988. At that time, the defendant Edward Lazarus served as Dean of Students.
While studying at Post, plaintiff lived in a dormitory on campus and her roommate was Jennifer Rapuano. They did not get along. Among other problems, plaintiff was upset because Ms. Rapuano had frequent visitors to her room, including a boyfriend who would spend the night. The tension between the two roommates became so serious that plaintiff, who had few friends CT Page 11221-N on campus and rarely had visitors, frequently would sleep at her family home in New Milford rather than subject herself to the tense situation with her roommate.
Plaintiff complained about the situation with her roommate to John Eaves, the housing director at Post. Mr. Eaves attempted to arrange at least one meeting between plaintiff, Ms. Rapuano and himself but Ms. Rapuano failed to attend.
On Valentine's Day weekend, plaintiff and her college boyfriend, Scott Hattersly left campus.
On Thursday, February 18, while plaintiff was still away, a counselor from the school, Sharon Santel, informed Dean Lazarus that Ms. Rapuano believed that plaintiff was involved in dealing drugs and that she was fearful for her safety. Dean Lazarus and counselor Santel then proceeded to the plaintiff's room where Ms. Rapuano presented some white powder and showed them plaintiff's top drawer where, she claimed, it was found.
According to defendant Lazarus, Ms. Rapuano claimed that she had observed plaintiff selling drugs in the room and that plaintiff had frequent visitors. The defendant also indicated that Mark Gregorio, the Assistant Director of Student Activities, confirmed that he had observed many people going to Ms. Rapuano and plaintiff's room at unusual hours.
Defendant Lazarus took some of the white powder to the Waterbury Police Department to determine whether it was cocaine. There, he met with Detective Nicholas DeMatteis. The powder presented to Detective DeMatteis was no longer all in its original containers. There was on packet, but there was also a large amount of white powder in a plastic bag. Apparently, neither Detective DeMatteis nor defendant Lazarus carefully examined the paper packet. In his twenty-two years of police experience, Detective DeMatteis had never seen as much cocaine in one place as there was white powder in the plastic bag presented to him by Dean Lazarus.
At Dean Lazarus' request, Detective DeMatteis performed a Valtox field test on the white powder. When the chemical reagent was added to the powder, the powder turned a light blue. Detective DeMatteis interpreted the color change as a slight positive test for the presence of cocaine. He testified that, because of the light color, he doubted that the material was CT Page 11221-O actually cocaine. He never told the Dean of his doubts, but he did tell the Dean that the powder would have to be sent to Hartford for further testing.
During the afternoon of that same day, plaintiff returned to campus and was confronted, by the defendant Lazarus and Mark Gregorio, in the lobby area of her dorm. The lobby was the only entrance to the dorm and, at the time, there were other students present in the area. Defendant Lazarus informed plaintiff that as a result of an anonymous tip, cocaine had been found in her belongings. Plaintiff became very upset and denied having any cocaine. She told the defendant that if cocaine was found in her possessions she suspected it was placed there by her roommate.
The defendant then took plaintiff to his office to continue the meeting where, although still crying and extremely upset, she requested to see the cocaine. Defendant denied her request stating that he had turned it all over to the Waterbury Police Dept. Plaintiff then indicated a willingness to take a lie detector test, insisting at all times that she was innocent. Throughout the meeting, the defendant appeared to take an accusatory position disregarding what plaintiff had to say in her own defense. He told her that a large amount of cocaine had been found and that she should expect to be arrested by the Waterbury Police Department. He suspended her from campus and suggested that she stay at home so that the police could find her. He also informed her that a meeting would be scheduled at which she could tell her side of the story and that he would contact her to set up the meeting. The defendant never offered to investigate plaintiff's fears that her roommate had planted cocaine in her belongings. He never informed plaintiff that she could have a college advisor of her choice present with her at the "meeting" he contemplated. Despite his responsibility to all students at Post College, including plaintiff, the defendant never advised her in any way as to how she might defend herself against the serious charges against her. As a result, the jury could have found that the defendant, having prejudged plaintiff, had determined that she was guilty of committing a serious crime and that she would receive no assistance, protection or fair and impartial treatment from either Dean Lazarus or Post College[.]
Certainly, a reasonable jury could have found that as a result of the meeting with defendant Lazarus, plaintiff suffered emotional distress; that she was caused to fear that she would CT Page 11221-P be arrested and charged with a serious crime; that she feared she would be unable to prove her innocence and thus would be sent to prison; and that she also feared that her life might be in danger if a real drug dealer heard of the accusations and believed that she was a rival.
The next day, defendant Lazarus called the Waterbury Police to have testing done on nine more packets of white powder. Although plaintiff had implored him to show her the purported cocaine, he made no effort to allow her to inspect the packets he now presented to the Waterbury police for testing.
Detectives Domingo Pietri and Jeremiah Wallace responded to defendant Lazarus' call. Once again, the powder tested positive for cocaine. Detective Wallace explained to the defendant that the test was not certain and that further testing would have to be done in Hartford. Again, apparently neither the officers nor defendant Lazarus carefully examined the writing on the packets.
On the same day as the second test was done, the defendant mailed two letters to the plaintiff at her home. In one of the letters, he referred to "the finding of cocaine in your room, specifically your drawer," and noted that "(d)espite your claim that the substance was not yours, the material was found in your belongings." The letter reflected the defendant's conclusion, previously communicated to her in the course of their face-to-face meeting the day before, that she was guilty of the crime of possession of cocaine.
The defendant's secretary left a message on plaintiff's answering machine informing her that there would be a meeting to discuss the charges against her on Tuesday, February 23. Although the letters sent by the defendant apparently envision a full-fledged hearing, the defendant never informed plaintiff that she had the right to be accompanied to any hearing by a college advisor of her choice and that she had the right to appeal the result of a hearing. Notwithstanding the defendant's conclusion of plaintiff's guilty and notwithstanding her right under the student handbook to a hearing by an impartial arbiter, the defendant intended to preside over the hearing himself.
The letters had not reached plaintiff by the date of the hearing, so she remained under the impression that she would have the opportunity for a simple meeting with the defendant. In fact, the defendant intended to hear testimony from CT Page 11221-Q plaintiff's roommate, from Mark Gregorio, and from college counselor, Shawn Santel. The defendant never advised plaintiff of his intentions in this regard.
Plaintiff arrived for what she believed would be a meeting accompanied by her mother and Attorney Terry Pellegrini, a family friend. When it became apparent that the defendant intended to conduct a hearing, Attorney Pellegrini discussed with the defendant the possibility of avoiding the need for a hearing if she were to withdraw from the school. At that point, plaintiff desired to withdraw from Post because of her treatment at the hands of defendant Lazarus. The hearing was postponed, through no action was taken by plaintiff to withdraw.
The plaintiff and Attorney Pellegrini testified that after she had decided to withdraw from the school, they asked that a college representative accompany them while the plaintiff cleaned out her belongings. Representing the defendant school, Mark Gregorio accompanied them to her room. In gathering her belongings, the plaintiff angrily shook each piece of wearing apparel demonstrating to Mr. Gregorio that she had no cocaine hidden in her possessions. When she came to a packet of a prescription medicine, she threw it to Mr. Gregorio who stated that it was identical to the white powder which had tested positive for cocaine on two occasions.
The cocaine, was, in fact, prescriptive medicine for menstrual cramps that plaintiff had received while visiting Hungary the previous summer. At that time, she had purchased enough of the medication to last her an entire year. When plaintiff had last seen it, the powder was in its original packaging: Small amounts of the medication were wrapped in paper wrappers on which were Hungarian writing. All of the packets had the same writing on them. The writing included the name of the pharmacy where the medication had been purchased, its address and telephone number. The telephone number was designated by the Hungarian word for telephone, "telefon".
The evidence indicates that plaintiff was traumatized by the incident. She suffered severe stomach pains, which required her to seek medical care. She suffered, and continues to suffer, from a recurring nightmare about the incident. She suffered from sleeplessness. These symptoms persisted for approximately two years after the incident. CT Page 11221-R
Notwithstanding the fact that she had left the school, Post College continued to bill Ms. Szollosy for tuition for the entire semester, including interest.
After withdrawing from school, there was no further communication with the defendants, by or on behalf of the plaintiff, other than a letter from plaintiff to defendant Lazarus dated March 2, 1988, requesting that all of her mail be forwarded to her New Milford, Connecticut home address.
In support of their motions, the defendant's claim that plaintiff failed to present, to the jury, sufficient evidence to support her claim of intentional infliction of emotional distress.
In regard to plaintiff's claim, the court charged the jury that in order to prevail plaintiff had to prove by a preponderance of the evidence,
1. that the defendant intended to inflict emotional distress on the plaintiff or that he knew or should have known that emotional distress would likely result from his conduct.
2. that the defendant's conduct was extreme and outrageous;
3. that the defendant's conduct was the cause of the plaintiff's emotional distress; and
4. that the emotional distress sustained by the plaintiff was severe.
The defendants specifically contend that plaintiff failed to prove the requisite intent or that defendant Lazarus knew or should have known that emotional distress would likely result from his conduct; that plaintiff failed to prove that such conduct was extreme and outrageous; that she failed to prove that the emotional distress she suffered was severe in nature, and that she failed to prove that her losses, injuries and damages were proximately caused by defendant's tortious conduct.
The court, however, finds that the evidence does support the verdict on plaintiff's emotional distress claim.
As indicated by the defendant in her brief, the jury could CT Page 11221-S reasonably have found from the evidence presented that defendant Lazarus determined her guilt without affording her a real chance to defend herself and that he then acted upon his premature conclusion by not simply suspending her from campus, but by informing her that she should expect to be arrested by the Waterbury Police and by generally treating her like a criminal.
Further, the jury could have concluded that defendant's offer of an opportunity to present her side of the story at a hearing or meeting over which he would preside was not made in good faith and that he should have but did not inform plaintiff of the procedural protections available at such a hearing (e.g., the right to have a college advisor present with her for the hearing and the right to appeal the result of the hearing. Finally, the jury could have determined that as a result of the defendant's actions, plaintiff suffered stomach pains for months afterwards, experienced a recurring nightmare about the incident, was caused to fear for her life and suffered sleeplessness.
Certainly, the jury could reasonably here found that defendant knew or should have known that emotional distress would likely result from his conduct.
Similarly, the jury could have found from the evidence of long lasting effects of plaintiff's stomach pains and nightmares, that her emotional distress was severe.
Again, viewing the evidence in the light most favorable to sustaining the jury's verdict, the court finds that a reasonable jury could have found that defendant's actions were extreme and outrageous.
In as much as the evidence does support the verdict and since there is no evidence that the verdict results from prejudice, partiality or excessive sympathy, it should stand.
Next the defendants contend that the plaintiff failed to present sufficient evidence to support the jury's finding of punitive damages. While defendants correctly indicate that:
 "[i]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." Gargano v. Heyman, CT Page 11221-T 203 Conn. 616, 622 (1987), citing Collens v. New Canaan Water Co., 155 Conn. 477 (1967);
and that plaintiff failed to show that either defendant Lazarus or defendant Post College intended to harm her, they incorrectly contend that the evidence does not suggest the jury's award of punitive damages.
Without restating the facts, set out elsewhere in this memorandum it is clear that, from those facts and the inferences permissibly drawn therefrom, the jury reasonably could have concluded that a preponderance of the evidence supports the finding that defendant Lazarus was recklessly indifferent to plaintiff's rights thereby providing the basis for the award.
The defendant also argues that the plaintiff failed to present sufficient evidence to support a finding of a CUTPA violation in that, plaintiff's evidence of the defendant's alleged conduct does not rise to the level of a CUTPA violation and that even if it did, no CUTPA cause of action exists by a student against a school.
The court in its charge to the jury stated that "The purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce, including the marketing of educational services, which was the trade in which Post College engaged."
The defendants, although not excepting to this part of the charge, now contend that a student-school relationship cannot lead to C.U.T.P.A. liability.
The court, however, is of a contrary opinion because the sale of educational services fits the definition of "trade" and "commerce" advanced in the applicable statute, Conn. Gen. Stat. § 42-110a(4), and the defendants fail to otherwise convince.
The case cited by the defendants as authority for the proposition that a student may; not advance a CUTPA claim against a school. Banerjee v. Roberts, 641 F. Sup. 1093 (D. Conn. 1986), does not hold that the sale of educational services by a school to a student cannot lead to CUTPA liability, rather, it holds that an alleged employer-employee relationship between a school and a student cannot lead to CUTPA liability. CT Page 11221-U
 Defendants citing as the CUTPA test the following: A trade practice is unfair when it offends established public policy; land is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Id. at 565, quoting Covenant Radio Corp. v. Ten Eighty Corp., 35 Conn. Sup. 1 (1977), argues:
that the evidence, when examined in the light of the foregoing test, fails to rise to the level of a CUTPA violation.
The court, however, disagrees and holds with plaintiff's argument that she presented sufficient evidence to establish a CUTPA violation by showing the defendant Lazarus violated public policy by concluding that she was guilty of a serious crime without investigating the case fairly and without providing her with a fair opportunity clear herself and that as a result, she suffered substantial emotional injury.
In its verdict on Counts One and Two (negligence against Dean Lazarus and Post College, the jury found the amount of $2,000.00 in tuition owed to the plaintiff and in its verdict on Count Eight (breach of contract), found $5,000.00 in tuition owed to her.
Defendants claim that the plaintiff failed to present sufficient evidence to support these findings. However, the jury could reasonably have found from the evidence, as part of plaintiff's damages, the $7,000.00 that defendant Post College has demanded from her in tuition and interest. The defendants challenge this on the grounds that she has only paid $200 of the tuition bill, however, they offer no case authority for the proposition that bills due and owing, as argued by the plaintiff, are not a proper part of damages. The plaintiff testified that she continues to be billed by Post College for tuition and interest and offered into evidence a bill sent by the defendant to her attorney. The defendants offered no contrary evidence on this issue and the jury's finding should not be disturbed.
Finally, defendants argue that the jury verdict should be set aside or remitted because it is excessive.
Conn. Gen. Stat. § 52-216a provides in relevant part: CT Page 11221-V
 If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the parties so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial.
The Connecticut Supreme Court on numerous occasions has set forth the standard for determining whether a verdict is excessive. As stated in Champagne v. Raybestos-Manhattan Inc.,212 Conn. 509, 556 (1989):
 The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. (Citations omitted.)
On the other hand, where "the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation . . ." a jury verdict should be affirmed. Wood v.Bridgeport, 216 Conn. 604, 611 (1990), and when ruling on a motion for remittitur, the trial court must view the evidence in the light most favorable to sustaining the jury's verdict.Berry v. Loiseau, 223 Conn. 786, 1810 (1992).
As set out above, the plaintiff testified that she suffered nightmares, sleeplessness and stomach pains as a result of her emotional distress and pain and suffering and the jury awarded her $70,000.00.
In light of the plaintiff's evidence, the court concludes that the damages awarded by the jury falls within the uncertain limits of just damages and should, therefore, be upheld.
In accord with the foregoing, the court orders the following:
1. Motion to Set Aside the Intentional Infliction of Emotional Distress Count: DENIED CT Page 11221-W
2. Motion to Set Aside the Punitive Damages Award: DENIED
3. Motion to Set Aside the CUTPA verdict: DENIED
4. Motion to Set Aside the claim for Tuition Owed: DENIED
5. Motion to Set Aside the Jury Verdict as Excessive: DENIED
/s/ West, J. WEST