[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant action involves the right to possession of property located at 457 Main Street North, Southbury, Connecticut. Plaintiffs, in their single count complaint, seek the issuance of an injunction prohibiting the execution of an order CT Page 12851 of ejectment against them. On March 21, 1994, they obtained a temporary injunction enjoining defendants from executing the order of ejectment or interfering with their use and occupancy.
In response, defendants filed the present motion requesting that the temporary injunction be dissolved or, should a basis be found for its continuation, that plaintiffs be required to post a bond for defendant's protection.
Although defendant filed the pending motion to dissolve the temporary injunction, it is plaintiffs' continuing burden to prove their entitlement to ongoing injunctive relief. Bucknerv. Shorehaven Golf Club, In;c. [Inc.], 13 Conn. App. 503, 504 (1988);Everett v. Pabilonia, 11 Conn. App. 171, 178 (1987). It is plaintiff's burden to prove that protectable interests are at stake in addition to proving irreparable harm and lack of an adequate legal remedy. Covenant Radio Corp. v. Ten EightyCorp., 35 Conn. Sup. 1 (1977).
From the credible evidence presented at hearing, the court finds the following:
The property that is the subject of this action is commonly known as 457 Main Street North, Southbury, Connecticut (the "Property").
During the month of April or May of 1988, the plaintiff, Maureen Morrill ("Morrill"), acquired the Property through a partnership known as Old Filed Estates Limited Partnership, for 1.2 million dollars. In order to complete the transaction, first mortgage financing was obtained from Omni Bank, predecessor in interest to New England Savings Bank ("NESB").
Morrill, who has lived at the Property since late 1988, after a lengthy design and approval process, succeeded in gaining authorization for the construction of 51 condominium units on the premises.
During 1989, the limited partners of Old Field Estates Limited Partnership were bought out of the partnership and were replaced by a group which came to be known as the "Merante Group". As a result of the Merante Group advancing funds to pay off the limited partners, the Property became subject to an $800,000. mortgage lien in favor of the Merante Group. Later in the year, Morrill and her partners, John Flammia and Stuart CT Page 12852 Brown (collectively referred to as "MFB"), commenced suit against the Merante Group. Subsequently the Merante Group brought an action to foreclose its junior mortgage interest in the property.
During the month of September 1990, NESB commenced foreclosure action of its first mortgage interest in the Property. As a part of the action, it caused a Notice of Lis Pendens to be recorded in the Southbury land records on September 21, 1990.
In or around the month of November 1991, the MFB partners, without the Merantes, formed the corporation Old Field, Inc. ("Old Field"), which came to be located on the Property at sometime after its formation and after the recording of the NESB Lis Pendens.
During the pendency of the first mortgage foreclosure action, MFB was introduced to a company called Kennedy Funding, Inc. ("Kennedy") through its mortgage broker. Kennedy is a New Jersey corporation which markets itself as a "lender of last resort", providing financing to "distressed" commercial real estate developers. Its president, defendant, Wolfer, is on probation for federal felony convictions of securities fraud and bank fraud. However, Old Field and MFB contacted Kennedy because several prior attempts to obtain more conventional financing to pay off some or all the debts on the Property had been unsuccessful.
A series of negotiations then took place between the parties, including numerous letters, telephone calls, conferences and meetings. Additionally, considerable fees were paid to Kennedy, but the transaction with Kennedy never closed.
Thereafter, despite Kennedy's letters stating that the prior commitment had terminated, through the fall of 1992 and the winter of 1993, Kennedy and Morrill continued to negotiate terms by which Kennedy would lend money to Old Field and/or MFB to refinance the NESB mortgage which remained in foreclosure. On April 21, 1993, Morrill, John Flammia and Old Field Associates, on the basis of a signed agreement between the MFB group and NESB, stipulated to a judgment of strict foreclosure with NESB in the foreclosure action. While Kennedy was not a part of this agreement, its negotiations with Morrill did conclude with a series of agreements and a commitment letter which contemplated CT Page 12853 Kennedy's purchase of the NESB mortgage, a completion of the foreclosure action by Kennedy and a sale back of the property to Old Field by Kennedy or its assignee. The commitment letter provided for a $1,000,000. loan to Old Field so as to enable it to repurchase the Property from Kennedy after completion of the foreclosure. In addition, the commitment letter provides in part, "notwithstanding anything to the contrary contained herein, it is a condition precedent to the closing of the loan that either Paul Roth shall have participated in the acquisition of the NESB mortgage or simultaneous with the closing of the [Kennedy] loan, Paul Roth (or another lender acceptable to [Kennedy] shall close on a loan with borrower or one or more of the guarantors of not less than Two Hundred Thousand Dollars ($200,000) to be secured by first mortgage on the "existing main house" which will be a unit (dividable into two units) in the Old Field Condominium."
During the months of April and May of 1993, Old Field and MFB attempted to obtain the $200,000. in additional financing through Paul Roth, Wynrow Consultants, and Whitehall without success.
On May 19, 1993, NESB was seized by the Federal Deposit Insurance Corporation ("FDIC"). Thereafter, Kennedy was advised by counsel not to proceed with the purchase of the NESB mortgage until it obtained confirmation from the FDIC that the FDIC would recognize and validate the transaction. Consequently, Old Field and MFB requested and were granted an extension of the terms and conditions of their commitment with Kennedy.
In early to mid-June of 1993, the FDIC advised MFB and Kennedy that it would proceed with the sale of the NESB mortgage to Kennedy and would recognize and validate the transaction, however, the Merantes obtained a temporary restraining order prohibiting the purchase. In the hope of settling their various disputes, the parties, the Merantes and Dorothy Ruppel negotiated a comprehensive settlement agreement, while Kennedy was not a signatory to this settlement agreement, it did enter into a letter agreement with the Merantes which was agreed to, accepted, and signed by Morrill, Old Field and the other partners of MFB, the Merantes and Dorothy Ruppel.
By their terms, the settlement agreement and letter agreement incorporated the earlier condition precedent requiring that Paul Roth or another lender acceptable to Kennedy provide CT Page 12854 the plaintiffs with not less than $200,000. in additional financing. They also provided, in part, that Old Field had until September 17, 1993 to complete its purchase of the Property. Further, if Old Field did not purchase the Property, the Merantes were given the right to acquire the Property from Kennedy prior to October 5, 1993.
Pursuant to the agreements, Kennedy acquired the NESB mortgage for $650,000. It then assigned its interest to Kennedy Funding Capital Corp., the defendant in this action ("Kennedy Capital"), which subsequently became substituted as a party plaintiff in the foreclosure action.
Kennedy Capital is a corporation which Kennedy created and controls and its sole function was to own the Property pending a sale. On August 13, 1993, pursuant to the judgment of strict foreclosure, Kennedy Capital became the absolute title holder of the Property. Thereafter, Old Field and MFB neither formally requested a closing date nor tendered performance of their obligations under the agreements, as they did not have the required $200,000. in additional financing. However, they did request an extension of the September 17th closing date. The Merantes refused to agree and neither closing deadline was extended.
Subsequent to October 4, 1993, due to the continued interest by Old Field in developing the Property, Kennedy continued to negotiate with Morrill in an effort to come to terms on an agreement by which Old Field could purchase the Property.
During this period of time, Morrill remained in residence on the Property without an oral or written agreement permitting same. During the month of February 1994, she was advised that if she did not agree to certain terms to remain on the Property, Kennedy Capital would pursue an execution of ejectment to have her removed.
Morrill and Old Field have not paid rent, use and occupancy, taxes or insurance on the Property since August 6, 1993.
On March 19th, the order of ejectment was served on Morrill and she obtained the present ex parte injunction.
From the facts as found, the court reaches the following CT Page 12855 conclusion:
That Old Field was not formed and did not take up occupancy on the Property until after November 1991, and thus, after the recordation of the September 21, 1990 lis pendens; that having been formed and taken up occupancy on the Property after the recordation of the lis pendens, Old Field had constructive notice of the foreclosure action and an obligation to join the action if it claimed an interest in the Property. It is bound by the terms of the judgment of strict foreclosure.
Further, the court finds that there was no written agreement which created any tenancy or occupancy rights in Old Field or Morrill after Kennedy Capital acquired title to the Property on August 13, 1993, pursuant to the foreclosure action; and that the plaintiffs have produced no credible evidence that Old Field Associates, the owner of the Property between 1990 and August 13, 1993, or the Merantes ever authorized Old Field to occupy the Property.
During the period from August 6, 1993 until March 21, 1994, Kennedy, Kennedy Capital and Wolfer allowed the plaintiffs to remain on the Property, but plaintiffs failed to establish that there was any oral agreement which gave them a tenancy in or right of continued occupancy at the Property. Further, the plaintiff, Maureen Morrill, was a party defendant to the foreclosure action, and is therefore bound by the terms of the judgment of strict foreclosure.
The court finds that plaintiffs have failed to establish any equitable ground which would preclude defendant from proceeding with the execution of an order of ejectment as to the plaintiffs (certainly it appears that plaintiffs' lack of additional funds and not defendant's alleged fraud or misrepresentation accounts for plaintiffs' inability to close.).
The court notes that the plaintiffs have filed an identical action, making similar legal claims, based upon the same exact facts as this action, in which they claim damages. That action has been filed before the United States District Court for the District of Connecticut. In connection with this action, plaintiffs filed a new Lis Pendens against the property, which, if valid, should be sufficient to protect their claimed ownership interest in the Property. Therefore, the pendency of the federal action does not require a continued injunction to CT Page 12856 permit plaintiffs to remain on the Property to protect their claimed ownership interests.
Defendant argues and the court agrees that since the plaintiffs have sought monetary damages in the pending federal action, and, in addition, sought compensatory damages as an alternative remedy in this action, they cannot and have not shown that they have no adequate remedy at law.
In all, plaintiffs have failed to meet their substantial burden to sustain the temporary injunction during the continued pendency of this action and therefore, defendant's motion to dismiss is granted.
/s/ West, J. WEST