## Lorraine Hinchliffe et al. *v.* American Motors Corporation et al.

Superior Court     Judicial District of     File No. 231516
Hartford-New Britain at New Britain

Memorandum filed March 10, 1982

*Pearl & Robertson,* for the plaintiffs.

*Day, Berry & Howard,* for the named defendant et al.

*Cohn & Birnbaum,* for the defendant Lipman Motors, Inc.

D. Dorsey, J. This action to recover damages for allegedly false representations made in connection with the sale of a motor vehicle and for failure to honor express and implied warranties was retried by the court after a judgment dismissing the complaint had been

reversed in part and sustained in part by the Supreme Court. *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 440 A.2d 810 (1981). The plaintiffs' original complaint contained six counts. The Supreme Court sustained the trial court's dismissal, pursuant to Practice Book § 302, of counts one, three and six, but required a retrial on counts two, four and five.

I

Count four of the plaintiffs' complaint asserts a claim under a manufacturer's standard warranty against the defendant American Motors Corporation, and a limited warranty against the defendant American Motors Sales Corporation. Reference is made in the complaint to the cooling system, timing chain, transmission, oil lubrication system, trailer towing assembly and hose connections. The plaintiffs assert that some or all of these components failed to function properly within the warranty periods and that the defendants failed to honor the warranties or failed to remedy the defects in a workmanlike manner. The plaintiffs claim they suffered expense and inconvenience as a result of these deficiencies and claim monetary damages.

The answer of the defendants denied the essential and material allegations in count four of the complaint. Both the April 23, 1976 purchase order for the new car, a 1976 Jeep, No. 15, Four-Door Wagoneer, Custom Wagon, and the April 27, 1976 invoice refer to a manufacturer's standard warranty given to the buyer; the invoice refers also to a limited warranty by American Motors Sales Corporation. The reference to the manufacturer's warranty notes that the motor vehicle is guaranteed up to one year or 12,000 miles. Both documents disclaim, on their face, any guarantee by the defendant Lipman Motors, Inc. The terms and conditions of the purchase order contain an additional disclaimer in paragraph one on the reverse side. Although

the plaintiffs introduced thirty-three exhibits and the defendants eight exhibits, the limited warranty of the defendant American Motors Sales Corporation, and the manufacturer's warranty of the defendant American Motors Corporation, were not introduced into evidence.

At the first trial, the plaintiffs complained about the problems with the fuel delivery system, the air conditioning system, the transmission, the electrical system, the cooling system and the back door. The Supreme Court, which did not have the precise nature of the express warranty before it, was satisfied that a warranty existed and that the notice requirements of General Statutes § 42a-2-607 (3) (a) were met. At the second trial, the plaintiffs made the same complaints. In their brief, however, the plaintiffs assert that the defendants were given notice of the following items during the warranty period: the transmission, the cooling system and the air conditioning system. The defects nevertheless persisted throughout the plaintiffs' ownership of the vehicle. The plaintiffs claim a warranty under General Statutes § 42a-2-313 (1) (a), a breach and notice under General Statutes § 42a-2-607 (3) (a), and a measure of damages under General Statutes §§ 42a-2-714 and 42a-2-715. The plaintiffs suggest to the court that if it finds a breach in one or more of the aspects claimed, it should award damages such as (a) the cost of a replacement vehicle, less a setoff for that amount recouped upon resale of the defective vehicle, plus incidental and consequential damages, (b) the cost of repair or replacement of the defective systems, plus incidental and consequential damages, and (c) rescission and restitution. Several of these remedies are at variance with the specific claim under count four which restricts itself to monetary damages.

The defendants do not now dispute the existence of an express warranty, nor do they dispute that the plaintiffs gave them notice of the claimed defects in the

transmission, cooling system and air conditioning system. The defendants' defenses are several: the plaintiffs abused the vehicle, voiding the warranty; the defendants made good faith efforts to comply with their warranty obligations and did, in fact, remedy all objective defects; the plaintiffs offered no evidence to sustain their burden of proof on direct or consequential damages.

At the trial, the evidence would have enabled the court to find that the plaintiffs purchased the 1976 Jeep Wagoneer, Four-Door Custom Wagon, on April 27, 1976, from Lipman Motors, Inc., for $8396. The salesman was Peter O'Shana. The defendants drove the vehicle until on or about June 21 of 1980, when they sold the vehicle to Chester V. D'Agostino. At the time of resale, the vehicle had been driven between 50,000 and 60,000 miles. The bill of sale from that transaction was introduced on November 23, 1981; it stated that the purchase price was $1500. The plaintiff David Hinchliffe testified initially at the trial that he had received $1500 for the vehicle "as is fit for the road, not guaranteed." On November 30, 1981, he testified that he had in fact received $3000 for the vehicle despite the lower figure shown on the bill of sale. The vehicle was in good general repair at the time of sale and the plaintiffs had advertised it for sale at a price of $3000. This price was lower than the average retail price in March, 1980, of $4050; and in November, 1980, of $3395. The vehicle, in addition to having been driven between 50,000 and 60,000 miles, had been used to pull a house trailer on numerous long trips: Connecticut to Florida to Arizona and back in 1976; Connecticut to Montana and the west coast and return to Connecticut in 1977; Connecticut to Glacier National Park in Montana and return in 1978; Connecticut to Florida and return in 1979. The defendant Lipman Motors serviced the vehicle fifteen times after the sale in response

to complaints from the plaintiffs. This service was without charge to the plaintiffs. The first service was rendered on April 28, 1976, when the mileage was 102 miles. The last service was April 4, 1977, when the mileage was 15,732. The bulk of the plaintiffs' complaints were minor and most of the defects complained of were remedied adequately. The transmission was defective and was replaced on December 21, 1976. It was replaced without charge to the plaintiffs despite the fact that it was over the 12,000 mile warranty. The plaintiffs incurred no further expense for warranty related items during the remaining life of the car, which had on it between 50,000 and 60,000 miles when sold on June 21, 1980. The only repair expense incurred by the plaintiffs during their ownership of the vehicle and supported by credible evidence was a bill incurred in California on August 27, 1977, at Zenker-Felt Motors. This was occasioned by a timing chain failure. The repair was made when the vehicle was out of warranty in excess of one year from the purchase date, April 27, 1976, with mileage of 26,320, in excess of 12,000 miles. The plaintiffs offered no evidence that this problem had been noticed to the defendants within the warranty period. The last time the defendant Lipman Motors serviced the car was on April 4, 1977, when it had mileage of 15,732. The service was for a transmission oil leak requiring a gasket replacement. The vehicle was examined on June 22, 1978, by Robert Cromwell, engineering consultant for the dealers and repairers section of the department of motor vehicles. Cromwell examined the vehicle, which then had on it more than 38,000 miles, test drove it and determined the vehicle to be in generally good operating condition with the exception of a passing gear switch and transmission leakage. The engineering consultant concluded that these items were minor. Testimony suggested that David Hinchliffe corrected the passing gear switch with

tape at no cost. No evidence was offered to suggest a transmission seal replacement prior to the sale of the car on June 21, 1980, to Chester D'Agostino.

From all of the credible evidence offered, the court cannot find or infer that the plaintiffs sustained loss or damage directly or indirectly resulting from any defects covered by the warranty postulated in count four. Many of the defects complained of were minor, but the court is satisfied they were remedied properly by the dealer. The transmission defect was significant; the dealer replaced it and the plaintiffs offered no credible evidence that as replaced it resulted in diminished resale value or out of pocket expense to them. The plaintiffs did complain of overheating, but the court is satisfied that the driving advice offered by the defendants rectified this problem. The plaintiffs' complaints about the air conditioning were unsupported by expert testimony or repair bills or claims of diminished value. It is significant to the court that no mention of air conditioning problems was made to the dealers and repairers division by the plaintiffs.

From all the evidence, the court is satisfied that the defendants have proved by a fair preponderance of the evidence that they have complied with their express warranty obligations. The court is equally satisfied that the plaintiffs have not sustained their burden of proving by the same standard that they sustained loss or damages as a result of a breach of express warranty by the defendants.

Judgment may enter for the defendants on the fourth count, with costs.

## II

The allegations contained in the second count of the plaintiffs' complaint suggest that the defendant Lipman Motors, Inc., was aware of the particular purpose

for which the plaintiffs intended to use the vehicle, that Lipman Motors indicated that the vehicle would be suitable for that purpose, that Lipman Motors had reason to know that the plaintiffs would and in fact did rely on Lipman Motors' skill or judgment when they bought the vehicle, that the vehicle was unfit for that particular purpose, and that the plaintiffs so notified Lipman Motors. General Statutes §§ 42a-2-315 and 42a-2-607 (3) (a).

Paragraph ten of the second count of the plaintiffs' complaint alleges that the plaintiffs "made known to the defendant Lipman Motors, Inc. . . . their desire to purchase a vehicle capable of transporting their family and attached living trailer on a contemplated cross-country trip, including the ascending of several mountain ranges between Connecticut and California." Paragraph eleven of the second count of the complaint claims that "[t]he defendant Lipman Motors, Inc. . . . assured and warranted . . . that the Jeep Wagoneer . . . possessed the capabilities which they . . . desired." Paragraph twelve asserts that the plaintiffs purchased the vehicle in reliance upon such assurances and warranties. Paragraphs fourteen and fifteen of the second count of the plaintiffs' complaint assert that the vehicle so purchased was not fit for those purposes because it lacked full-time four-wheel drive, and that the plaintiffs were therefore unable to utilize the vehicle for cross-country traveling with an attached living trailer, particularly because the vehicle in question lacked the off-road or traction capabilities for which "full-time four-wheel drive" was necessary, capabilities which the plaintiffs had made a requirement of in the vehicle they had purchased.

The defendants answered the second count by denying generally its material allegations.

The plaintiffs claim in their brief that they have exceeded the threshold proof requirements of the elements of implied warranty of fitness for a particular purpose. They assert that they made Lipman Motors' salesman aware of their need for a rough, tough vehicle capable of hauling a trailer through difficult terrain. They claim that they proved explicit assurances from the salesman that the vehicle would so perform, a reliance on their part on these assurances, and ultimately a breach of this warranty and notice to the vendor. As a remedy, the plaintiffs claim direct and consequential, damages, taking the position that the vehicle supplied them was valueless. The plaintiffs retreated slightly from this position, however, to concede that there would have to be a setoff for the value recouped on the June 21, 1980 resale of the vehicle for $3000. The plaintiffs suggest that the court consider rescission of the contract and restitution as an alternative remedy, although their complaint does not claim it.

The defendants' brief is predicated upon proof offered at the trial that the implied warranty of fitness for a particular purpose was not nearly as broad as that claimed by the plaintiffs, that there was, in fact, no convincing proof that the warranty was in fact breached and, if the court should find the warranty breached as claimed by the plaintiffs, that the plaintiffs have failed to prove damages in compliance with their burden under the Uniform Commercial Code.

Giving consideration to the testimony offered at the trial by the Hinchliffes and by the sales manager for Lipman Motors, Peter O'Shana, and after making an appropriate discount for the credibility of David Hinchliffe based on his self-repudiated testimony about the resale value of the vehicle, the court finds that the warranty of implied fitness for a particular purpose was broad enough to include a reasonable amount of off-the-road driving over rough terrain incidental to the

primary purpose of cross-country touring on reasonably adequate roads hauling a twenty-foot Wilderness living trailer under generally reasonable weather conditions.

The only evidence which the plaintiffs offered to substantiate a breach centered around various incidents in which the vehicle got stuck in snow, ice, mud or in wet or sandy conditions. These episodes were isolated, of short duration and involved no provable expense to the plaintiffs. When compared with the extensive driving cross country that the plaintiffs did in utilizing the vehicle in question, the relatively few incidents appear to be of no objective significance and do not constitute a breach of warranty of implied fitness for a particular purpose.

There is no evidence whatsoever that the defendants ever warranted that the vehicle in question would have perfect traction in every road or off-road condition; yet this is precisely what the plaintiffs are complaining about.

The failure to find a breach suffices to defeat the plaintiffs' claim under this count, but something more remains to be said about the plaintiffs' claim for damages. The plaintiffs offered no evidence that they demanded revocation of the contract or, to adopt their terminology, rescission and restitution. The plaintiffs sold the vehicle in June of 1980, after accumulating mileage of between 50,000 and 60,000 without incurring any applicable expense for repairs. The demand for rescission and restitution is thus without any foundation. The burden of proof on the issue of the diminished value of the bargain rested on the plaintiffs; it was not met merely by introducing the sales price of the vehicle in April of 1976 and its resale price in June of 1980.

Because the plaintiffs have failed to prove a breach of warranty and because the plaintiffs have failed to prove any direct or incidental damages, the court finds for the defendants on the second count.

Judgment may enter for the defendants on the second count, with costs.

### III

Count five of the plaintiffs' complaint repeats paragraphs one, two, three, four, five, six, seven, eight and nine of count one. Paragraph ten of this count characterizes the representations made in the first nine paragraphs as unfair or deceptive acts or practices within the meaning of chapter 735a of the General Statutes. The plaintiffs therefore seek the remedies provided in § 42-110g of the General Statutes: (1) money damages; (2) punitive damages; (3) attorney's fees; (4) costs; and (5) such equitable relief as is deemed necessary or proper. In paragraph three of count five, the plaintiffs allege that the defendants promoted and advertised the attributes of Jeep Wagoneers and, in particular, a "full-time, 4 wheel drive" system known as "American Motors Quadra Track." In paragraph four, the plaintiffs allege that the "Quadra-Track" system was not a system for providing "full-time, 4 wheel drive." In paragraph seven, the plaintiffs assert that these representations were false, untrue, inaccurate and misleading.

The defendant American Motors Sales Corporation admitted such promotions and advertisements. The other two defendants denied them. All defendants denied that the Quadra Track was not in fact a system for providing "full-time, 4 wheel drive." All defendants denied that the representations about Quadra Track were false, untrue, inaccurate and misleading.

The contents of this count allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §§ 42-110a through 42-110q. The plaintiffs, claiming to be victims of unfair or deceptive trade practices or acts, undertook to prove to the court by a fair preponderance of the evidence that the vehicle they purchased did not have a system providing "full-time, 4 wheel drive" to its wheels despite the admitted promotions and advertisements that it did. This undertaking required the plaintiffs to produce sufficient evidence to support a finding that the defendants' conduct in representing Quadra Track as a system providing "full-time, 4 wheel drive" constituted an unfair or deceptive trade practice. The plaintiffs did not assume the burden of proving an intentional deceit or their reliance on it, or that the defendants' representation became part of the basis of the bargain.

In paragraph five of the fifth count of their complaint, the plaintiffs describe Quadra Track as a system permitting two wheels on any particular axle to be driven through a differential gear arrangement which, although it allowed for uniform torque supplied by the engine to be transmitted to each wheel on the axle, did not provide for the same torque or drive as between both wheels on the same axle when there was a significant difference in the coefficient of friction applicable to said wheels. Paragraph six of this count asserts that Quadra Track does not provide equal and constant torque to all four wheels of a vehicle so equipped. By implication, at least, full-time four-wheel drive does provide equal and constant torque to all four wheels of a vehicle.

In their written memorandum, the plaintiffs refer to true four-wheel capability, making a distinction between torque to axles and drive to wheels. The plaintiffs assert that what had been advertised as "full-time,

4 wheel drive" was actually a limited slip differential system. The plaintiffs argue that since not all four wheels on Quadra Track would move at all times, Quadra Track was not full-time four-wheel drive, a capability which is a characteristic of a conventional four-wheel drive vehicle. In a reply memorandum, the plaintiffs further assert that since Quadra Track is not a system to provide to all four wheels the same power that all other four-wheel drive vehicles have when a transfer case lever is engaged or the front hubs have been locked, it is not a full-time four-wheel drive system. Hence, advertising that it is is a deceptive practice. They submit that the plain and ordinary meaning of the phrase full-time four-wheel drive suggests and promises that at all times, and at all speeds, and in all places, the vehicle possesses the capabilities and attributes of a vehicle which is fully engaged in four-wheel drive as conventional vehicles are with the transfer case lever engaged or the front wheel hubs locked. It is necessary to add that conventional four-wheel drive vehicles in 1976 were normally two-wheel drive vehicles unless a transfer case lever was engaged or wheel hubs were locked.

The plaintiffs offered little expert testimony at trial. An aeronautical engineer with no automotive experience testified that drive means to move, not simply to receive torque. The court finds that this testimony has little weight in resolving the ultimate question. The essence of the plaintiffs' case was the production of testimony from Lorraine Hinchliffe and David Hinchliffe that in the course of driving the vehicle between 50,000 and 60,000 miles over a four year period, frequently pulling a living trailer, they experienced, on occasion, episodes when the vehicle or vehicles got stuck in sand, water, mud or ice, or on snow or rocks. These occasions were not many relative to the miles traveled and caused no out-of-pocket loss to

the Hinchliffes. At least on some of the occasions, one wheel would have traction capacity but would not move while the other three wheels spun hopelessly.

The evidence was clear and certain that the vehicle did have a limited slip differential described as technically advanced by the plaintiffs and a Quadra Track emergency drive located in the glove box for use in situations in which engine power cannot be transmitted to the front or rear axles, such as when the vehicle is stuck and the wheels are spinning; or when the vehicle is "high centered"—one or both front or rear wheels are off the ground; or when the front or rear driveshaft is damaged or removed. David Hinchliffe testified that he was reluctant to use emergency drive and did not attempt to use it on many of the occasions when he was stuck. The emergency drive nullifies the action of the limited slip differential and locks the front and rear axle together.

There was no expert evidence from the plaintiffs that either a limited slip differential or an emergency drive switch nullifying its function was incompatible with full-time four-wheel drive. It is clear, however, that the plaintiffs seek to imply such an incompatibility to the court. On the basis of all of the plaintiffs' evidence, on the complaint and on posttrial memoranda, the court concludes that the plaintiffs' basic dissatisfaction with this vehicle, as measured by this court, is that it did not perform as they thought it should, that is, that Quadra Track did not have the ability under any and all tractive circumstances, regardless of the weather, to move the vehicle when only one wheel had traction. The court, despite severe reservations about David Hinchliffe's credibility, is satisfied that the plaintiffs proved this to be so. The plaintiffs did not offer to prove, nor did they prove that conventional four-wheel drive vehicles with transfer levers engaged or with front wheel hubs locked had this capacity.

The complaint does not state that the defendants widely promoted and advertised Quadra Track as having such a capability. The complaint refers only to a full-time four-wheel drive system. The plaintiffs have failed to prove that Quadra Track was not a full-time four-wheel drive system and the defendants have proved that it was to the satisfaction of the court. The court does not wish to review in detail the testimony of Robert Cromwell, a registered professional engineer and a consultant for the department of motor vehicles. His conclusion that Quadra Track is a full-time four-wheel drive system was detailed in an exhibit filed by the defendants. Cromwell also opined in this exhibit that the term "full-time, four-wheel drive" is not misleading nor does the phrase constitute false advertising. The court cannot adopt Cromwell's opinion as its opinion but must consider this ultimate issue and arrive at an opinion on its own based on the pleadings, facts, argument and current legal principles.

For a trade practice to be deceptive, it must have a tendency and capacity to deceive. *Federal Trade Commission* v. *Hires Turner Glass Co.,* 81 F.2d 362, 364 (3d Cir. 1935). The consumer must be deceived in his initial contact with the challenged practice. *Carter Products, Inc.* v. *Federal Trade Commission,* 186 F.2d 821, 824 (7th Cir. 1951); *Covenant Radio Corporation* v. *Ten Eighty Corporation,* 35 Conn. Sup. 1, 10, 390 A.2d 949 (1977).

The standard utilized by the court for determining whether the defendants' promotion of Quadra Track as a full-time four-wheel drive system would have a deceptive impact on a consumer, is the standard applicable to an unthinking, ignorant and credulous person. *Aronberg* v. *Federal Trade Commission,* 132 F.2d 165, 167 (7th Cir. 1942). CUTPA protects the economically unsophisticated as well as the sophisticated. *Murphy*

v. *McNamara,* 36 Conn. Sup. 183, 190, 416 A.2d 170 (1979). The evidence does not provide a basis for determining that David Hinchliffe was a gullible, unsuspecting member of the public; he has benefitted from a technical education and prior personal experience with the product. Although this standard was characterized as unrealistic in *Covenant Radio Corporation* v. *Ten Eighty Corporation,* supra, there are available guidelines which are helpful in assisting a court to determine what constitutes an unfair or deceptive practice which has a tendency or capacity to deceive. " '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' " *Murphy* v. *McNamara,* supra, 189.

Other limitations or guidelines to the application of this standard are as follows:

(1) It is improper to speculate that the public will place a patently absurd interpretation on an advertisement. *Standard Oil Company of California* v. *Federal Trade Commission,* 577 F.2d 653, 657 (9th Cir. 1978).

(2) "An advertiser cannot be charged with liability in respect of every conceivable misconception, however outlandish, to which his representations might be subject among the foolish or feebleminded." *In the Matter of Heinz W. Kirchner,* 63 F.T.C. 1282, 1290 (1963), aff'd sub nom. *Kirchner* v. *Federal Trade Commission,* 337 F.2d 751 (9th Cir. 1964).

(3) "A representation does not become 'false and deceptive' merely because it will be *unreasonably* mis-

understood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." (Emphasis added.) Id.

(4) Prevention of the deception of the gullible and credulous as well as the cautious and knowledgeable is a principle which is not to be "applied uncritically or pushed to an absurd extreme." Id.

Applying these limitations and guidelines to the case at hand, the court concludes:

(1) That the representations, promotions and advertisements of the defendants that Quadra Track was a full-time, four-wheel drive system are accurate and not false; that they do not have a tendency or capacity to deceive the general populace; that these representations do not offend any public policy, are not immoral or unethical, oppressive or unscrupulous and do not cause substantial injury to consumers and did not cause substantial injury to these plaintiffs.

(2) That if the perception of these plaintiffs was that such representations, advertisements and promotions meant to the gullible that Quadra Track had the ability to move the vehicle under any and all circumstances when only one wheel had traction, this perception was a patently absurd interpretation, unreasonably understood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.

(3) That if the perception of the plaintiffs was that the advertisements, promotions and representations of the defendants suggest a system that provides to all four wheels of a vehicle the same power that all other four-wheel drive vehicles have when a transfer case lever is engaged or the front hubs have been locked, the plaintiffs have failed by a fair preponderance of the evidence to show the court (a) what power all or any

other four-wheel drive vehicles have when engaged or locked, and (b) that Quadra Track does not have this power.

Since the plaintiffs have failed to prove a deceptive act or practice on the part of the defendants, judgment may enter for the defendants, with costs.