[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MOTION OF DECISION ON MOTION TO STRIKE
This is a civil action filed on October 30, 1992 by plaintiff, Quality Electric Co., against defendant, Suffolk Construction Co., Inc. On February 4, 1993, plaintiff filed a five count amended complaint, alleging breach of contract, breach of implied contract, quasi contract, a restitution claim, and violation of the Connecticut Unfair Trade Practices Act (hereinafter "CUTPA"), respectively.
Plaintiff alleges in its amended complaint that in approximately January, 1992, plaintiff was contacted by defendant, and was solicited to submit a bid on electrical work to be performed at three sites. Plaintiff further alleges that based on the information provided by defendant, plaintiff derived a quote which was communicated to the defendant.
Plaintiff alleges that in early February, 1992, defendant provided plaintiff with a letter stating in relevant part:
 This is to advise you of our intent, subject, to the execution of a mutually agreeable contract CT Page 6394 substantially in the form attached hereto, to award your firm the Contract to perform the electrical work in accordance with the terms and conditions of the Contract Documents.
 The amount of this base ontract [sic] will be $231,900.00, with add alternates of $29,000. for the nurse call and $112,000. for the generators.
 You are cautioned not to incur any costs for our account in connection with this work until said Contract has been executed or unless specifically directed, in writing, by an officer of this firm.
 Please acknowledge your acceptance and agreement by signing the enclosed copy and returning it to this office.
(Amended Complaint, first count, Para. 4; Exhibit A). Plaintiff further alleges that no contract was attached to the aforementioned letter.
Plaintiff alleges that at the request of defendant, plaintiff hired an electrical engineer, reevaluated the estimates of the electrical work to be performed at the three sites, prepared "highly particularized breakdowns of some additional costs which would be associated with additional work at. . . the three sites," provided those cost breakdowns to defendant, and provided to defendant, in late April and early May, 1992, a statement of "the aggregate costs associated with all work that the Defendant did wish the Plaintiff to perform at each of the aforesaid three sites, which costs did sum to $624,965.64." (Amended Complaint, first count, Paras. 6-9). Plaintiff further alleges that plaintiff "did perform certain electrical work at the Hillside Manor Nursing Home, and the Lorraine Manor Facility" which are two of the three contract sites. (Amended complaint, first count, para. 8).
Plaintiff alleges that on or about June 4, 1992, defendant advised plaintiff that plaintiff "could not proceed to perform any further electrical work on any of the three sites, and that in fact another electrical contractor had been engaged to perform this work." (Amended complaint, first count, Para. 10). CT Page 6395
On February 18, 1993, defendant filed a motion to strike each count of plaintiff's amended complaint, along with a memorandum of law. On March 3, 1993, plaintiff filed a memorandum in opposition to the motion to strike.
The motion to strike challenges the legal sufficienty of a pleading. Practice Book 152; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). The motion to strike admits all facts well pleaded. Ferryman v. Groton, supra, 142. "[I]t does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original; citations omitted.) Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." (Citation omitted.) Id., 108-09. The court "`must take the facts to be those alleged in the plaintiff's complaint and construe the complaint in the manner most favorable to sustaining its legal sufficiency.'" Warner v. Konover, 210 Conn. 150, 152, 553 A.2d 1138 (1989), quoting Michaud v. Wawruck, 209 Conn. 407, 408, 551 A.2d 738
(1988).
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint;" Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988), citing King v. Board of Education, 195 Conn. 90,93, 486 A.2d 1111 (1985); and "cannot be aided by the assumption of any facts not therein alleged." (Citations omitted.) Fraser v. Henninger, 173 Conn. 52, 60,376 A.2d 406 (1977).
 Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied. . . . [H]owever, . . . [not] every argument in a motion to strike is rendered defective by the moving party's allegation of some fact not contained in the pleadings. . . . CT Page 6396
(Citation omitted.) Liljedahl Brothers, Inc. v. Grigsby,215 Conn. 345, 348-49, 576 A.2d 149 (1990).
Plaintiff argues that defendant's motion to strike is largely a speaking motion. Specifically, plaintiff asserts that "[s]uch recitations as the `Facts' portion of Defendant's memorandum. . . constitute a `speaking' Motion to Strike. . . [and that] [t]he Defendant's extensive representations of facts throughout its Memorandum of Law is unwarranted, and a conspicuous effort to distract the Court from the text of the Complaint." (Plaintiff's memorandum, p. 1).
Count One
Defendant argues that plaintiff "has failed to allege the existence of any written contract or other writings in which Suffolk authorized Quality Electric to perform any services for the projects for which it would be compensated by Suffolk." (Defendant's memorandum, p. 5). Plaintiff does not allege in the amended complaint whether the contract was oral or written. To the extent that defendant's argument assumes that plaintiff's breach of contract claim is grounded on the existence of "a written contract or other writings," defendant's motion to strike speaks on facts not alleged in the amended complaint.
Defendant also argues that although count one sounds in breach of contract, plaintiff has not alleged that a contract existed between the parties. Defendant contends that plaintiff has failed to allege the acceptance of plaintiff's offer or a meeting of the minds. Defendant asserts that "[i]f a contract did not exist between the parties, there could not have been a breach of. . . contract." (Defendant's memorandum, pp. 4-6). In opposition, plaintiff argues that count one sufficiently alleges that a contract exists.
"`"[I]n order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties."'" Lembo v. Schlesinger, 15 Conn. App. 150,154, 543 A.2d 780 (1988), quoting Lyon v. Adgraphics, Inc., 14 Conn. App. 252, 254, 540 A.2d 398 (1988). CT Page 6397
 It is elementary that to create a contract there must be an unequivocal acceptance of an offer. In the case of a bilateral contract, the acceptance of the offer need not be express but may be shown by any words or acts which indicate the offeree's assent to the proposed bargain. . . . The acceptance of the offer must, however, be explicit, full and unconditional. . . . And the burden rest[s] on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract.
(Citations omitted.) Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 246, 268 A.2d 391
(1970).
 It is well settled principle of law that a renunciation or repudiation of a contract prior to performance allows the adverse party to treat the contract as breached and gives that party the right to institute an action for damages. 17 Am.Jur.2d, Contracts 449 (and cases cited therein).
Suppa Brothers, Inc. v. Structures, Inc., 12 Conn. App. 675,677, 533 A.2d 901 (1987).
In paragraphs three and eight of count one of the amended complaint, plaintiff alleges that plaintiff derived a quote for electrical work, prepared highly particularized breakdowns or additional costs for additional work, and provided defendant with both the quote and the breakdowns. These factual allegations describe an offer by plaintiff to defendant.
In paragraph five of count one of the amended complaint, plaintiff alleges that defendant advised plaintiff that it had been awarded the contract to perform the work described in the letter, and that plaintiff was to ignore the letter to the extent that it suggests that plaintiff had not yet been awarded the contract. In paragraph seven plaintiff further alleges that defendant "repeatedly and inequivocally [sic] represented. . . that all work as might result from [the] expansion in scope of work would also be performed by Quality Electric Company, in CT Page 6398 addition to the work referenced in the letter. . . ." These factual allegations describe the acceptance by defendant of plaintiff's offer.
In paragraph ten of count one of the amended complaint, plaintiff alleges that the defendant advised plaintiff that plaintiff could not proceed to perform any further electrical work at the three sites and that, in fact, another electrical contractor had been engaged to perform the work. The factual allegations in count one describe defendant's renunciation or repudiation of the contract, prior to its full performance, giving plaintiff the right to institute an action for damages on a breach of contract theory. Accordingly, defendant's motion to strike count one of plaintiff's complaint is denied because the plaintiff has pleaded sufficient facts to support a breach of contract claim.
Count Two
Defendant argues that count two of plaintiff's amended complaint fails to allege the facts necessary to establish the existence of an implied contract. Defendant contends that "[t]his complaint does not allege that Suffolk agreed, either by words, action or conduct, to undertake any form of actual contractual commitment to Quality Electric." (Defendant's memorandum, p. 8). Defendant asserts that plaintiff's actions were "taken pursuant to normal business judgment" and not because of the existence of an agreement, and that "Quality Electric has not alleged that this written authorization was ever issued." (Defendant's memorandum, p. 8). Plaintiff argues that the allegations in its amended complaint satisfy the pleading standard for an implied contract because count two "describes at length a series of representations and ongoing contacts, to include part performance." (Plaintiff's memorandum, p. 4).
"An implied contract depends upon the existence of an actual agreement between the parties." Christensen v. Bic Corporation, 18 Conn. App. 451, 454, 558 A.2d 273
(1989), citing Coelho v. Posi-Seal International, Inc.,208 Conn. 106, 111, 544 A.2d 170 (1988). "Accordingly, to prevail on the. . . count of [the] complaint. . . which allege[s] the existence of an implied agreement between the parties, CT Page 6399 the plaintiff [has] the burden of proving. . . that [defendant] had `"agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment"' to. . . [plaintiff]." (Citations omitted.) Coelho v. Posi-Seal International, Inc., supra, 112.
In count two of the amended complaint, which incorporates the allegations in count one, plaintiff alleges that defendant agreed to some form of actual contract commitment. Plaintiff alleges that defendant did so by words of assurance to the effect that the contract had been granted, by requesting that plaintiff hire an engineer, by encouraging plaintiff to assist defendant in further analyzing changes in the scope of the work, and by accepting from plaintiff "highly particularized breakdowns of some additional costs." (Amended complaint, count two, Paras. 5-8). Furthermore, plaintiff alleges that the terms of the implied agreement called for plaintiff to "provide the electrical work. . . at each of the three sites, for the sum of $624,965.64." (Amended complaint, count two, Para. 11). Therefore, plaintiff has alleged sufficient facts to support a claim based on the existence of an implied contract. Accordingly, defendant's motion to strike count two of plaintiff's amended complaint is denied.
Counts Three and Four
Plaintiff alleges quasi contract in count three, and makes a claim for restitution in count four. Since quasi contract is a "theor[y]. . . based upon common law principles of restitution;" Barrett Builders v. Miller, 215 Conn. 316,317 n. 1, 576 A.2d 455 (1990); the arguments concerning counts three and four will be addressed simultaneously.
 "In distinction to an implied [in fact] contract, a quasi [or implied in law] contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it. . . . It is based on equitable principles to operate whenever justice requires compensation to be made." (Citations omitted; emphasis added.) Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, 407, 356 A.2d 181
CT Page 6400 (1974). "With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed to examine the circumstances and the conduct of the parties and apply this standard." Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564-65, 244 A.2d 404 (1968).
(Emphasis in original.) Bershtein, Bershtein Bershtein v. Nemeth, 221 Conn. 236, 242, 603 A.2d 389 (1992).
Defendant argues that plaintiff has failed to allege sufficient facts to show that defendant was entitled to reimbursement for plaintiff's bidding expenses. Defendant asserts that plaintiff should not be entitled to recover damages in quasi contract because plaintiff's actions "were voluntarily taken as a result of a calculated business judgment," and because "[a]ny funds expended by Quality Electric were routine business costs in an effort to win the bid and be awarded the contract." Defendant contends that "[t]hese costs expended are a risk of doing business, and are not recoverable if the bid is unsuccessful." (Defendant's memorandum, pp. 9-10).
 The theory of restitution as a basis for recovery encompasses both unjust enrichment and quantum meruit as the terms have been used in Connecticut cases. Broadly speaking, the availability of restitution is dependent upon unjust enrichment, that is, upon a perceived injustice because one party has benefitted [benefited] at the expense of another. In a narrower sense, unjust enrichment has been the form of action commonly pursued in this jurisdiction when the benefit that the enriched party receives is either money or property. . . ." The question is: Did he, [the party liable] to the detriment of someone else, obtain something of value to which he was not entitled? . . . Quantum meruit, by comparison, is the form of action which has been utilized when the benefit received was the work, labor, or services of the party seeking restitution. CT Page 6401
(Citations omitted.) Burns v. Koellmer, 11 Conn. App. 375,384, 527 A.2d 1210 (1987). To recover in quantum meruit "[t]he pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." (Citations omitted.) Id., 383-84.
In paragraphs seven and eight of count three of the amended complaint, plaintiff alleges that plaintiff assisted defendant in a comprehensive reevaluation of the work to be performed, provided defendant with highly particularized costs breakdowns, and performed electrical work at two of defendant's work sites, after receiving defendant's assurance that plaintiff had been awarded the contract. In paragraph eleven of count four of the amended complaint, plaintiff makes similar allegations to those in count three, and adds that: "Plaintiff is entitled to compensation for the fair value of the services and materials furnished to the Defendant, and for any gain which the Defendant did realize as a consequence of being armed with such particularized information in its search for another electrical contractor to actually perform the work."
The circumstances and conduct alleged by plaintiff in counts three and four are sufficient to support quasi contract and restitution claims, because the counts allege that defendant knowingly accepted the services of plaintiff after representing to plaintiff that it would be compensated for those services. Accordingly, defendant's motion to strike counts three and four of plaintiff's amended complaint is denied.
Count Five
Defendant argues that the complaint's factual allegations are inadequate to sustain a CUTPA claim. Specifically, defendant asserts that the complaint fails to allege the "cigarette rule" factors and unfair acts "on more than one occasion in the context of more than one transaction." (Defendant's memorandum, pp. 14, 18). Furthermore, defendant asserts that a breach of contract is not a violation of CUTPA, and that in any case, count five CT Page 6402 should be stricken because CUTPA may not be used as a weapon by a business against its customer.
In count five of the amended complaint, plaintiff incorporates paragraphs one through ten of count one, and further alleges in paragraph eleven:
 The actions of the Defendant in inducing the Plaintiff to provide substantial analysis of the electrical work necessary to the upgrade of each of the aforedescribed sites, benefiting from both the Plaintiff's expertise and from the Plaintiff's definition and cost analysis of all work to be performed, upon the false pretense that the defendant would allow the Plaintiff to perform this work for the sums of money quoted to accomplish it, does constitute a violation of the Connecticut Unfair Trade Practices Act, for the reason that such conduct constitute [sic] false or deceptive acts or practices.
CUTPA states in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce." General Statutes 42-110b(a).
 It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a)(1)), as from time to time amended.
General Statutes 42-110b(b); see also Hinchliffe v. American Motors Corporation, 184 Conn. 607, 617,440 A.2d 810 (1981).
 The [Federal Trade] Commission has described the factors it considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair: CT Page 6403
 "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed Reg 8355 (1964).
(Emphasis added.) FTC v. Sperry Hutchinson Co., 405 U.S. 233,244-45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). "It is well settled that in determining whether a practice violates CUTPA we have `adopted the criteria set out in the "cigarette rule" by the Federal Trade Commission for determining when a practice is unfair. . . .'" (Citations omitted.) Cheshire Mortgage Service, Inc. v. Montes,233 Conn. 80, 105, 612 A.2d 1130 (1992); see also Lester v. Resort Camplands International, Inc., 27 Conn. App. 59, 70,605 A.2d 550 (1992).
The allegations that plaintiff was induced by defendant's words and actions to derive and deliver a quote for electrical work, hire one engineer, prepare and deliver highly particularized breakdowns of additional costs for additional work, and perform certain electrical work for defendant, combined with the allegation that defendant refused to award plaintiff the contract, could be construed as acts in violation of the second and third elements of the "cigarette rule" factors. Defendant's alleged conduct may be construed as allegations of immoral, unethical, oppressive or unscrupulous acts that "caused substantial injury to. . . [a] plaintiff who had expended time and effort in arriving at a contract with the defendant only to have the defendant breach it, thereby causing it to lose its profit." See Bridgeport Restoration Co. v. A. Petrucci Construction Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 243087 (September 9, 1988, Levine, S.T.R.), aff'd, 211 Conn. 230, 557 A.2d 1263
CT Page 6404 (1989) (Supreme court affirmed attorney's fees awarded by the trial court after the trial court found that a breach of a construction contract violated the second and third elements of the "cigarette rule.").
Defendant argues that allegations of isolated instances of improper conduct cannot support a claim brought under CUTPA, and cites Koehm v. Kuhn, 41 Conn. Sup. 130,139, 558 A.2d 1042 (1989, Levine, S.T.R.), aff'd,18 Conn. App. 313, 557 A.2d 933 (1989); Guastamachio v. United Laboratory, 4 CSCR 414, (April 24, 1989, Walsh, J.); and Hinchliffe v. American Motors Corp., 39 Conn. Sup. 107,121, 471 A.2d 980 (Super. CT. 1982) (on remand from Hinchliffe v. American Motors Corp., 184 Conn. at 623, ordering retrial of counts two, four and five). In opposition, plaintiff argues: "The Defendant. . . cites only those reported cases it deems favorable to this contention. The question is in fact disputed in the Superior Courts, and the weight of authority rejects, expressly or implicitly, the [`more than one isolated instance'] limitation which the Defendant urges this Court to impose." (Plaintiff's memorandum, p. 7).
Unlike plaintiffs' allegations in Koehm and Guastamachio, which addressed acts incidental to defendant's trade or commerce, plaintiff's allegations in the case at hand are concerned with conduct central to defendant's alleged trade. See Koehm v. Kuhn, supra (Defendant "did not generally, as a restauranteur, conduct her trade or commerce by bringing lawsuits."); see also Guastamachio v. United Laboratory, supra (Defendant "not engaged in the business of making such transactions."). A general contractor like defendant conducts its business by soliciting bids and awarding contracts to sub-contractors, and a general contractor is in the business of sub-contracting. Koehm and Guastamachio are distinguishable from the case at hand, and are thus inapposite on the issue of whether the allegation of isolated instances of improper conduct support a claim brought under CUTPA.
Hinchliffe does not focus on the isolated instance bar in CUTPA claims. See Hinchliffe v. American Motors Corp., 39 Conn. Sup. at 120-22 (Finding that plaintiffs, who had alleged the unfair promotion of certain automobile CT Page 6405 feature, had "failed to prove a deceptive act or practice on the part of the defendants. . . ."). Even if this court were to read plaintiff's amended complaint as alleging only one isolated unfair transaction, Hinchliffe would provide no clear guidance on the issue of whether the allegation of one isolated unfair transaction can support a CUTPA claim.
As one superior court decision noted:
 Our Supreme Court has never fully addressed the one isolated instance bar in CUTPA claims. A number of cases which appear to involve an individual instance as in the present case have been reviewed without focusing on the present issue. See, Bridgeport Restoration Co. v. A. Petrucci Construction Co., [supra]. . . (violation of contract to perform construction work). . . .
 A number of Superior Court judges have analyzed the single instance issue and most have concluded that a single act may constitute a CUTPA violation. . . . These judges all recognized that CUPA is a remedial measure and is to be construed liberally in an effort to effectuate its public policy goals. Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 756[, 474 A.2d 780] (1984). Many have indicated that Mead [v. Burns, 199 Conn. 651, 666, 509 A.2d 11
(1986)] is limited to CUIPA [CUTPA] situations only due to the particular language of the statute ("committing or performing with such frequency as to indicate a general business practice. . ."). General Statutes 38-61(6). Metpath[, Inc. v. IDS Corporation, 3 Conn. L. Rptr. 349 (March 12, 1991, Aronson, J.)]. . . This court adopts that reasoning.
Appleton v. Suffield Financial Corp., 4 Conn. L. Rptr. 548, 549 (April 2, 1991, Berger, J.); see also Gibbs v. Southeastern Investment Corp., 651 F. Sup. 1419, 1420-21
(D. Conn. 1987); Radsom v. Amerlink, Ltd.,3 Conn. L. Rptr. 382 (March 19, 1991, Dranginis, J.); Metpath, Inc. v. IDS Corp., supra; Yale Univ. School of Medicine v. Wurtzel,2 Conn. L. Rptr. 813 (November 9, 1990, Flanagan, J.); Petrone v. Melnick, 2 Conn. L. Rptr. 99 (July 13, 1990, CT Page 6406 Klaczak, J.); Art Form, Inc. v. Overnite Transportation Co., 3 CSCR 190 (January 7, 1988, Leuba, J.); Cardello v. Reves, 3 CSCR 466 (April 15, 1988, Walsh, J.); Sadek v. Vitka, 2 CSCR 876 (July 28, 1987, Reynolds, J.); and Judge v. Housemaster of America, 2 CSCR 421 (March 9, 1987, Gill, J.); Levesque v. Kris Enterprises, 4 Conn. L. Rptr. 86 (May 20, 1991, Susco, J.); Allison v. Widder,1 Conn. L. Rptr. 461 (April 6, 1990, Cioffi, J.). But see Duncan v. Burnside Motors, Inc., 2 CSCR 379 (February 26, 1987, O'Neill, J.) (statute does not apply to a single occurrence).
The Connecticut Supreme Court has stated that
 [i]n enacting CUTPA, the legislature intended to create an expansive act which would provide relief to persons suffering "any ascertainable loss" as a result of an unfair or deceptive trade practice. General Statutes 42-110g (a). To that end, the legislature expressly provided that "[i]t is the intention of the legislature that this chapter be remedial and be so construed." General Statutes 42-110b (d).
Web Press Services Corp. v. New London Motors, Inc.,203 Conn. 342, 354, 525 A.2d 57 (1987). "CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts. To interpret CUTPA narrowly. . . effectively negates this legislative intent." Hinchliffe v. American Motors Corp.,184 Conn. at 618. If CUTPA is construed broadly, in recognition of its remedial and expansive nature, plaintiff's allegations of defendant's improper commercial conduct are actionable under that statute.
The plaintiff has not simply alleged that defendant breached its contract, but also that defendant induced plaintiff to provide services under a false pretense, and that in so doing, defendant engaged in "false or deceptive acts or practices" in violation of CUTPA. We conclude that count five alleges conduct actionable under CUTPA.
Finally, inspite of defendant's assertions that this is a dispute between a consumer and a seller of services, the facts alleged in the complaint, when viewed in the CT Page 6407 light most favorable to plaintiff, are sufficient to show a business relationship between the parties, as general contractor and subcontractor, within the purview of CUTPA. Accordingly, defendant's motion to strike count five of plaintiff's amended complaint is denied.
Defendant's motion to strike counts one through five of plaintiff's amended complaint is denied.
Mary R. Hennessey, Judge
Next page is 6421 CT Page 6421