[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a breach of contract action involving a claim by the plaintiff, Vincent P. Larobina, against the defendant, Home Depot, USA, Inc. (Home Depot), for allegedly giving him a false estimate of the cost of purchasing and installing carpeting. The plaintiff, who appears pro se in this action, describes himself as a "property manager by occupation."
In his revised complaint dated March 14, 2000, the plaintiff alleges in the first of the three counts that on January 25, 1999, he visited the CT Page 3015 Home Depot store in Norwalk, received an estimate for the purchase and installation of a certain type of carpeting, and gave the defendant a $100 deposit. The plaintiff alleges that the exchange of the estimate and the deposit constituted "a formal written Agreement." The plaintiff further alleges that the contract price was $7.37 per square yard, including sales tax. The plaintiff also claims that an agent for the defendant came to his premises and measured the area to be carpeted as 47.34 square yards, and thus the total price should have been $348.90. It is further claimed in this first count that upon returning to the defendant's store several days later, the plaintiff was presented with a new quote of $574.53 on the basis of approximately $12.14 a square yard.
In the second count, the plaintiff alleges that the defendant was unjustly enriched, and in the third count, the plaintiff contends that the defendant's conduct was fraudulent and violated General Statutes § 42-110b et seq., the Connecticut Unfair Trade Practices Home Act (CUTPA). The plaintiff claims that as a result of the defendant's conduct he sustained monetary damages and he seeks a permanent injunction preventing the defendant from using this particular form of contract and punitive damages.
The defendant filed an answer denying that it owed any money to the plaintiff. In addition, the defendant filed special defenses alleging that no contract was entered into between the parties, that the defendant was not given an opportunity to "cure" the alleged breach of contract, that the plaintiff was estopped from bringing this action because he had canceled the contract, and that the plaintiff failed to mitigate damages.
The case was referred for trial to Attorney John W. Hetherington, an attorney trial referee, in accordance with General Statutes § 52-434
(a) and Practice Book § 19-2A. The referee conducted a trial and submitted a report finding the following facts: (1) on January 25, 1999, when ordering a certain carpet, the plaintiff received two documents, the first a quote (Quote #1), which stated that the "total charges of all merchandise and services" would be $7.37 a yard;[1] (2) immediately thereafter the plaintiff paid $100 as a "Deposit/measure," and received another document entitled "Special Services Customer Agreement" pertaining to measuring the area to be supplied with carpeting, and indicating a zero "balance due;" (3) after the plaintiff's premises had been measured and the plaintiff returned to defendant's store, he was given "Quote #2," which indicated a balance due, after crediting the $100 deposit, of $474.53,[2] whereas the plaintiff contends that the balance due, based on Quote #1, should have been $348.90, a difference of $225.63; (4) the difference in the two quotes is that Quote #2 indicates a charge for installation, whereas Quote #1 shows "0" for "installation CT Page 3016 total due;" (5) the defendant offered to return the $100 deposit, "but the plaintiff refused; and (6) the plaintiff also refused to agree to a suggestion by the defendant that it would install the carpeting at $7.37 per square yard, as indicated in Quote #1.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff and the defendant had in fact entered into a binding contract at the time he was given Quote #1 and the Special Services Customer Agreement in which the defendant agreed to sell the carpet chosen by the plaintiff at $7.37 a square yard including installation; (2) the defendant had breached the contract by initially asserting that the cost to the plaintiff would be the price in Quote #1, but then attempting in Quote #2 to obtain a higher price; (3) the plaintiff is entitled to the return of his $100 deposit as compensatory damages, but not to the difference between the two quotes because the defendant offered to supply and install the carpeting at the original price and thus mitigated its damages; (4) the defendant acted "recklessly" in violation of CUTPA by reason of "the confusing use of the two basic documents;" (5) the plaintiff is entitled to $1,000 as punitive damages because of the CUTPA violation, but is not entitled to an injunction relating to the contract form and quotes.
As authorized by Practice Book § 19-14, on September 28, 2000, the defendant filed its objections to the report.[3] The objections are: (1) the referee miscalculated the damages because the first quote of $7.37 for carpeting and padding is based on square yards, whereas the charge for installation is based on square feet; (2) the use of quotes by the defendant does not constitute a binding contract, and the only way that the referee found that there was a contract was to credit the plaintiff's testimony about his intentions and his interpretation of the transaction; and (3) the defendant's conduct did not violate CUTPA.
On September 29, 2000, the plaintiff also filed objections to the report.[4] The first involves the referee's overruling of his objection to the admission into evidence of the defendant's offer to furnish and install the carpeting at the original price contained in the first quote. According to the plaintiff, that offer by the defendant constituted an attempt to settle the litigation and was inadmissable. The referee characterized this offer as an attempt to "mitigate damages" on the part of the defendant and used that figure to offset the amount of monetary damages of $225.63 that he would otherwise have recommended. The second objection filed by the plaintiff relates to the referee's decision not to recommend that an injunction issue against the defendant enjoining continued use of the quote forms that the plaintiff had been furnished.
This court's scope of review of an attorney trial referee's report was CT Page 3017 reiterated by the Supreme Court in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996). The court held in that case that: "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [currently § 19-17]. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.).
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845-46, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. In that regard, the referee based his recommendations on the two different quotes given to the plaintiff, so the facts are really not in dispute. Moreover, although excerpts of the trial were included, the parties did not file a transcript of the trial. The result of not furnishing such a transcript to the trial court was discussed by the Appellate Court in John M. Glover Agency v. RDBBuilding, LLC., 60 Conn. App. 640, 646, 760 A.2d 980 (2000).
The second task for the court is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Elgar v. Elgar,
supra, 238 Conn. 846. The court is obliged to "render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." Anastasia v. Beautiful Your Hair Designs, Inc.,61 Conn. App. 471, 475, ____ A.2d ___ (2001). To the same effect is Practice Book § 19-17 ("The court shall render such judgment as the law requires upon the facts in the record").
Based on the various objections to the report filed by both parties, the first issue is whether the parties actually entered into a contract. "Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of fact." PresidentialCapital Corp. v. Reale, 231 Conn. 500, 506-507, 652 A.2d 489 (1994). "Appellate review of findings of fact is limited to deciding whether such findings were clearly erroneous." Napoletano v. CIGNA Healthcare ofConnecticut, Inc., 238 Conn. 216, 232, 680 A.2d 127 (1996). "A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on CT Page 3018 the entire evidence is left with the definite and firm conviction that a mistake has been committed." D'Angelo v. McGoldrick, 239 Conn. 356,363-64, 685 A.2d 319 (1996).
The referee determined that the parties entered into a contract when the plaintiff was given quote #1 and paid a $100 deposit. This factual finding cannot be said to be "clearly erroneous."
The next issue is what the parties intended in their contract.Tallmadge Brothers, Inc. v. Iroquois Gas Transmission System, L.P.,252 Conn. 479, 746 A.2d 127 (2000), holds that in dealing with a contract, the initial inquiry is whether the wording of the contract is ambiguous or unambiguous. "Although ordinarily the question of contract interpretation, being a question of intent, is a question of fact . . . [where] there is definitive contract language, the determination of what the parties intended by the their contractual commitments is a question of law." (Internal citations omitted.) Id., 495.
In this present case, the attorney trial referee determined that the contract language was ambiguous and the court agrees. This in turn requires an inquiry into the intention of the parties, which "is a question of fact." Tallmadge Brothers, Inc. v. Iroquois Gas TransmissionSystem, L.P., supra, 252 Conn. 495. The determination of the intent of the parties to an agreement involves in turn a determination of the credibility of the witnesses. "Great deference is given to the trial court's findings [regarding the facts of a case] because the trial court is responsible for weighing the evidence and determining the credibility of witnesses." Beizer v. Goepfert, 28 Conn. App. 693, 704-05,613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
It is clear that the referee chose to believe the testimony offered by the plaintiff and not that of the defendant regarding their intent about the two different quotes. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely her function as a fact finder." Nor'easter Group, Inc. v.Colossale Concrete, Inc., 207 Conn. 468, 473, 542 A.2d 692 (1988). "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v.Goepfert, supra, 28 Conn. App. 706. Therefore, this court is bound to accept the factual findings by the referee. Tarka v. Filipovic,45 Conn. App. 46, 54, 694 A.2d 824, cert. denied, 242 Conn. 903,697 A.2d 363 (1997).
The next issue is the referee's finding that the contract between the CT Page 3019 parties was actually breached. It is well recognized that whether a contract has been breached is an issue of fact for the trier of fact.Bowman v. 1477 Central Avenue Apartments, Inc., 203 Conn. 246, 257,524 A.2d 610 (1987). The trier of fact in this case determined that the parties had agreed that the defendant would furnish and install certain carpeting for the plaintiff at $7.37 a square yard and that the defendant breached the contract by rescinding the first quote and attempting to charge the plaintiff a higher price. Again, this finding cannot be deemed to be "clearly erroneous."
With respect to the objection filed by the plaintiff regarding the recommendation that the plaintiff should not recover the difference between the two quotes based on the defendant's offer to settle the dispute by performing the work at the original price, the objection is sustained. It is well known that settlement negotiations are not admissible in evidence. Tomasso Bros., Inc. v. October Twenty-Fourth,Inc., 221 Conn. 194, 198, 602 A.2d 1011 (1992). The referee referred to "mitigation of damages" on the part of the defendant as offsetting the damages, but it is a plaintiff suing for damages who is obliged to mitigate damages. The defendant "bears the burden of proving a plaintiff's failure to mitigate damages in an action for breach of contract." Preston v. Keith, 217 Conn. 12, 24, 584 A.2d 439 (1991). The defendant offered to do the job at the first price in order to end the litigation by the plaintiff, who was described by the attorney trial referee, certainly in a masterful understatement, as "tenacious." Thus, the recommendation of the referee is rejected in this regard and the plaintiff is entitled to recover the difference in the two quotes which, according to the referee, amount to $225.63, representing the difference between $574.53 and $348.90.
Although ordinarily whether a practice is unfair and violates CUTPA is an issue of fact; Paulus v. Lasala, 56 Conn. App. 139, 153, 742 A.2d 379
(1999), cert. denied, 252 Conn. 928, 746 A.2d 788 (2000); in these circumstances, it is the court that must decide whether a particular statute applies to a given state of facts found by the fact finder. Moreover, "[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." Romano v. Derby,42 Conn. App. 624, 628, 681 A.2d 387 (1996).
General Statutes § 42-110g (a) provides in pertinent part that: "Any person who suffers any ascertainable loss of money . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." "To satisfy the `ascertainable loss' requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or CT Page 3020 deceptive practice or act and that the item is different from that for which he bargained." Hinchliffe v. American Motors Corporation,184 Conn. 607, 614-15, 440 A.2d 810, on remand, 39 Conn. Sup. 107,471 A.2d 980 (1981).
In PAR Painting, Inc. v. Greenhorne O'Mara, 61 Conn. App. 317, 318,763 A.2d 1078 (2001), the court set aside a jury verdict finding a violation of CUTPA because there was insufficient evidence to sustain such a verdict. In this present case, there is insufficient evidence that the plaintiff suffered an "ascertainable loss of money" as a result of a CUTPA violation. The plaintiff is being awarded compensatory damages as a result of the breach of contract based on the difference between the two quotes, so he is, in effect, reaping the benefit of his bargain. But the plaintiff rejected the return of his deposit and did not actually purchase any merchandise or property from the defendant which was "different from that for which he bargained." Hinchliffe v. American Motors Corporation,
supra, 184 Conn. 615. The plaintiff decided that instead of getting his deposit back, and walking away from the misunderstanding, he would initiate CUTPA litigation. Thus, the referee's recommendation that CUTPA damages be awarded is not accepted.
Judgment may enter for the plaintiff on the complaint to recover the $100 deposit, and $225.63, the difference between the two quotes, a total of $325.63. Costs are to be taxed in favor of the plaintiff by the chief clerk of this court in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 26th day of February, 2001.
William B. Lewis, Judge